Francine **MARXE**

v.

**C.W. JACKSON, C.E. Yates, and AT & T Communications, Inc., Appellants.**

No. 87–5074.

United States Court of Appeals, Third Circuit.

Argued July 21, 1987.

Decided Nov. 24, 1987.

Rehearing and Rehearing En Banc Denied Jan. 5, 1988.

---

Nadine Taub, Rutgers Women's Rights
Litigation Clinic, Newark, N.J., for amicus

curiae American Civil Liberties Union of New Jersey, et al.

Francis X. Dee (argued), Patrick G. Brady, Kevin C. Donovan, Laurence Reich, Carpenter, Bennett & Morrissey, Newark, N.J., Christine L. Miniman Morristown, N.J., Joseph V. Ippolito, AT & T Communications, Inc., Basking Ridge, N.J., for appellant.

Paul Schachter (argued), Denise Reinhardt, Reinhardt & Schachter, P.C., Newark, N.J., for appellee.

Charles A. Shanor, Gen. Counsel, Lorraine C. Davis, Acting Associate Gen. Counsel, Susan Buckingham Reilly, Asst. Gen. Counsel, E.E.O.C., Washington, D.C., for amicus curiae E.E.O.C.

Before BECKER, STAPLETON, and HUNTER, Circuit Judges

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This appeal involves a challenge to a preliminary injunction granted by the district court in a title VII retaliation case. Appellants, Charles Jackson, Charles Yates, and American Telephone & Telegraph Communications Company (collectively AT & T), contend that the preliminary injunction was erroneously granted. They argue that the appellee, Francine Marxe, failed to demonstrate either likelihood of success on the merits or a threat of irreparable harm to herself. Marxe disagrees, contending that the district court correctly found both requirements to have been met. We conclude that while the record supports the finding of a likelihood of success on the merits, it does not support the finding of irreparable injury to Marxe. Accordingly, we will reverse.

## I. FACTS

Francine Marxe worked for AT & T for more than 19 years and rose steadily through the AT & T ranks. On Jan. 1, 1975, after six years of employment, Marxe became an AT & T staff associate and in 1976, she was promoted to Level 3 status. She received a third promotion in January 1978, this time to Level 4, making her a division manager. Throughout this period of time, Marxe was regarded as well-qualified and received consistently positive evaluations.

By the fall of 1982, shortly after her transfer to Marketing Project Management, Marxe began experiencing what she perceived to be discriminatory treatment. According to her affidavit, Marxe requested a transfer in the summer of 1983, because of allegedly "differential" treatment she received from Charles Jackson, her immediate supervisor at the time, Charles Yates, and other agents of AT & T. She was not transferred. Because she felt that her supervisors did not respond adequately to her complaints, Marxe filed her initial charge with the Equal Employment Opportunity Commission (EEOC) in June 1985. The complaint enumerated ten manifestations of the perceived discrimination and charged that "[r]espondents have refused to remedy the discriminatory treatment afforded [me]." App. at 71.

Within six months of her first EEOC charge, Marxe was described as only "marginally satisfactory." Marxe felt that, after she filed the charge, Jackson viewed her with increasing hostility, and that he scrutinized her more closely and began to undercut her in public. In January 1986, Marxe filed a second EEOC charge. She filed this suit in the United States District Court for the District of New Jersey at about the same time.

Shortly thereafter Marxe was transferred to a new department, ostensibly so that her competence could be assessed by a new supervisor. She worked under two supervisors, Louis Golm initially and Francis Ianna after Golm received a promotion. Golm stated in his affidavit that he told Marxe "the performance [he] had seen ... was directionally correct and ... [that] if this type and level of performance were to continue, [he] would be pleased." App. at 217. Ianna was also satisfied with Marxe's performance.

On July 11, 1986, while Marxe's EEOC charges were pending, she was evicted from her office on little more than an

hour's notice. She was allowed to take with her only her personal belongings and papers she needed that day. She was not permitted to return to her office until the end of the day. AT & T insists that the short-notice eviction was necessary to facilitate effective compliance with Marxe's discovery requests.

Marxe continued to work at AT & T during the pendency of her complaints and her suit. In the fall of 1986, she twice brought a tape recorder, which she kept in a handbag, to meetings with Ianna. Marxe surreptiously taped conversations concerning her job responsibilities and a workforce reduction plan that AT & T was implementing at that time. She testified at her deposition that her primary motivation in making the tapes was to enhance her job performance. She later realized that the tapes might prove useful in her lawsuit and delivered them to her attorney.

AT & T learned of the existence of the tapes on December 3, 1986, when Marxe produced copies of them in response to AT & T's discovery requests. Ianna and Bridget Manzi, a director-level executive assistant, confronted Marxe six days later and demanded an explanation of the taping. Ianna suspended Marxe shortly after she had completed her explanation. He confiscated her security badge and ushered her out of the building, treatment which, Marxe contends and AT & T disputes, ordinarily was accorded only employees guilty of serious crimes, such as theft or embezzlement, or who were leaving to join competing communications companies.

On December 12, 1986, nine days after having received the tapes, AT & T formally fired Marxe. Ianna read her the contents of a discharge letter over the phone. The letter stated, in part:

> Your actions in secretly tape recording conversations with your supervisor and others while conducting business matters presents the company with a serious problem.... The above actions have

unilaterally destroyed the trust which must exist as the foundation of the employer/employee relationship.... AT & T Communications, Inc., has considered the needs of the business and your stated reasons for the secretive tape recordings ... and has concluded that your services will no longer be required by the corporation.

App. at 214–215.

Thereafter Marxe petitioned the district court for preliminary relief, alleging that she had been fired in retaliation for her employment discrimination claims in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964.[1] Based on affidavits filed by the parties, the court concluded that Marxe had demonstrated a likelihood of success:

> ... I do not believe in good conscience they ... would have discharged her but for the fact that she was engaging in litigation, which is protected. I feel that they would not have ordinarily discharged someone else under the same circumstances.

App. at 299.

With respect to the existence of an imminent threat of irreparable harm to Marxe, the district court concluded that:

> I do believe that in the context of this litigation, that there will be an injury which would be difficult, if not impossible for the plaintiff to carry this litigation forward if she were not reinstated. Any grown person of wide human experience in Title VII type of litigation has got to know that a crucial part of putting a case forward is the ability to marshal witnesses, obtain evidence, even to obtain insights from fellow employees.
>
> I think her ability to do that would be nil if she were in a position where it was perceived by other employees that she incurred the wrath of the company and she was consigned to the unemployment ranks.

---

1. It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [an employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
42 U.S.C. § 2000e–3(a) (1976 & Supp. IV 1980).

App. at 299–300. The court granted Marxe's request for preliminary relief, which it stayed pending resolution of this appeal.

## II. ANALYSIS

"We have consistently held that our review of the grant or denial of preliminary injunctions is limited to determining whether there has been an abuse of discretion, an error of law, or a clear mistake in the consideration of the proof." *Moteles v. University of Pennsylvania,* 730 F.2d 913, 918 (3d Cir.), *cert. denied* 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984). This court has explained that "limited review is necessitated because the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing ... [that] is the responsibility of the district judge." *United States Steel Corp. v. Fraternal Ass'n of Steelhaulers,* 431 F.2d 1046, 1048 (3d Cir.1970).

### A. Likelihood of Success

Accordingly, if a study of the record suggests the district court did not completely miss the mark in its conclusion that Marxe is likely to succeed on the merits of her case, we must uphold the court's finding on that criterion. We conclude that the district court did not abuse its discretion and we uphold its finding.

The record contains evidence from which a trier of fact could conclude that (1) Marxe gave almost two decades of service to AT & T during the vast majority of which she was consistently rated as an above-average performer and repeatedly promoted, ultimately to a level of substantial management responsibility, (2) there were no complaints about her performance until after she had filed her first EEOC complaint, (3) after that filing, Jackson's hostility to Marxe increased and he repeatedly accused her of challenging his supervisory authority, (4) within six months of the filing of the first EEOC complaint, her evaluations had dropped to a rating of "marginally satisfactory," (5) Marxe filed a second EEOC complaint and a lawsuit, (6) AT & T's response

to her request for production of documents and the manner in which AT & T ultimately escorted her from its premises evidenced hostility towards Marxe, and (7) given the fact that Marxe had not shared the tape with anyone who was free to utilize the information contained thereon and the fact that there was no specific prohibition in AT & T's Code of Conduct on the use of tape recorders, AT & T's discharge was an overreaction logically explainable in terms of an ulterior motive. Based on these sustainable findings of primary fact, we cannot say that the district court abused its discretion in predicting a finding of ultimate fact that retaliation played a role in the discharge decision.

### B. Irreparable Injury to Marxe

The district court's finding of a threat of irreparable injury to Marxe poses a more difficult issue. Once again we are guided in our review by the deferential abuse of discretion standard. *Moteles v. University of Pennsylvania,* 730 F.2d 913, 918 (3d Cir.), *cert. denied* 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984); *United States Steel Corp. v. Fraternal Ass'n of Steelhaulers,* 431 F.2d 1046, 1048 (3d Cir.1970).

Marxe acknowledges that she had the burden of showing an imminent threat of irreparable injury to herself. Appellee's Brief at 32–46. She contends, however, that a "lesser showing of harm is necessary for retaliation claims pursued through the court after completion of the administrative process." Appellee's Brief at 37. Both this reduced standard and the more stringent traditional standard, Marxe insists, are satisfied by the district court's finding that her ability to prove her case will be jeopardized if she is not employed at AT & T during the pretrial period.

We do not question that deprivation of the ability of a Title VII plaintiff to prove his or her case can constitute irreparable injury. And while we decline to accept Marxe's invitation to fashion a special reduced standard for the quantum of evidence necessary to secure *pendente lite* relief in a retaliation case, we do agree that a Title VII suit involving alleged retaliation

presents a situation calling for increased sensitivity on the part of a court. The problem in this case, however, is the absence of sufficient record basis for the district court's finding that Marxe's ability to prove her case will be materially impaired if she is not reinstated pending trial.

■ The *only* record evidence arguably supporting Marxe's claim of irreparable injury consists of the following two paragraphs of her affidavit and the fact that she had employment discrimination claims pending at the time of her discharge:

22. Since I have been fired, I will no longer be in a position to gather information and evidence in support of my case.

\* \* \*

27. On information and belief, other employees of AT & T are aware that something extraordinary has happened to me, and they are concerned and worried about what has happened.

App. at 61, 63. We are uncertain what message these paragraphs were intended to convey. The district court did not discuss them, but it apparently read the paragraphs as reflecting not a concern about physical access to evidence but rather a concern about potential witnesses failing to cooperate. Whatever their proper reading, however, without a more concrete showing by Marxe of the basis for thinking irreparable injury has occurred or will occur, the district court was simply not in a position to evaluate the danger and exercise the kind of equitable discretion that the law requires. *A.L.K. Corp. v. Columbia Picture Industries, Inc.*, 440 F.2d 761 (3d Cir. 1971).

It is true, as Marxe stresses, that her evidence of irreparable injury must be evaluated in light of the fact that her suit includes a retaliatory discharge claim. That a Title VII plaintiff has been discharged after asserting his or her claim of employment discrimination will often be very relevant to the irreparable injury issue. A discharge in these circumstances *can* cause potential witnesses to infer that their employer has retaliated and thereby discourage their cooperation with the discharged plaintiff. This potential for intimidation may be reduced to some degree if potential witnesses observe that the courts afford prompt relief from retaliatory action. For this reason, a district court should be sensitive to the possibility that intimidation of potential witnesses may occur in situations of this kind and be vigilant for any signs that it is taking place. On the other hand, the *possibility* that intimidation may occur does not mean that it has occurred. Whether or not it has occurred in a given case, or will occur in the future, will depend on a host of factors, including but not limited to: the atmosphere at the place of employment; the breadth of knowledge within the place of employment about the discharge; the nature of the incident or incidents that precipitated the discharge; the presence or absence of alternative explanations for the employer's action; the personality of the potential witness and the degree of his or her aversion to litigation; the witnesses' view of the alleged victim; any relationship between the two; and the employer's past treatment of the potential witness.

■ The discovery provisions of the Federal Rules of Civil Procedure and interviews of potential witnesses normally provide a plaintiff with ample access to the available evidence. We do not think it is asking too much to insist that a Title VII plaintiff in a retaliation case pursue these avenues before concluding that they will be futile. In the absence of special circumstances, we believe that such a plaintiff should know enough about his or her case to be able to identify potential witnesses and to recognize if they are being less than candid in responding to his or her inquiries. If the district court's fears are realized and Marxe does encounter difficulties, we believe she will be able to provide the district court with a satisfactory foundation for a preliminary injunction.

■ It seems apparent to us that the district court in this case inferred that irreparable injury would occur solely from the fact that Marxe was fired while her suit was pending. Accordingly, if we upheld its decision to grant *pendente lite*

reinstatement on this record, we would be establishing a rule of law that irreparable injury to the plaintiff will be presumed in all cases involving a claim of retaliatory discharge. We have previously rejected an argument that prejudice to the plaintiff should be presumed in all private Title VII actions. *Moteles v. University of Pennsylvania,* 730 F.2d 913 (3d Cir.), *cert. denied* 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984). We now join the Court of Appeals for the Second Circuit in declining to presume irreparable injury to the plaintiff in all Title VII retaliation cases. *See Holt v. Continental Group, Inc.,* 708 F.2d 87, 90–91 (2d Cir.1983). Courts have long required that a party seeking preliminary relief produce affirmative evidence indicating that he or she will be irreparably harmed should that relief be denied. *See generally Cruickshank v. Bidwell,* 176 U.S. 73, 81, 20 S.Ct. 280, 283, 44 L.Ed. 377 (1900) ("The mere assertion that the apprehended acts will inflict irreparable injury is not enough."); *A.L.K. Corp. v. Columbia Pictures Industries, Inc.,* 440 F.2d 761, 764 (3rd Cir.1971) ("The injury contemplated by the denial of a preliminary injunction must be actual and of serious consequence, not merely theoretical."); *Jenny v. Crase,* 13 Fed.Cas. 547 (C.C.D.C.1807) (No. 7,285) (injunction refused because "plaintiff merely states her apprehension"). We find nothing in the position of a plaintiff in a retaliation case that is so extraordinary as to necessitate departure from this tradition.

█ Nor can we accept Marxe's argument that even though affirmative irreparable injury is required, her burden is less than that of plaintiffs in other kinds of cases. As we have indicated, the fact that a plaintiff has been discharged after the filing of his or her employment discrimination claim is an important one in resolving an irreparable harm issue and, accordingly, in one sense at least, a plaintiff in a retaliatory discharge case may have an easier time proving irreparable injury than a

plaintiff in a different kind of case. But as we understand Marxe's "lesser showing" argument, she is making a different point, one that involves a distinction between retaliation cases in which the plaintiff's claim has been through the entire administrative process, including conciliation, and retaliation cases in which the plaintiff has elected to bring suit before that process has concluded. Marxe suggests that while a traditional showing of irreparable injury to the plaintiff is appropriate for the latter category of cases, a "lesser showing of harm" should be required in cases like hers in which the administrative process has been fully exhausted. Appellee's Brief at 37. In support of this contention, she relies upon our decision in *Moteles v. University of Pennsylvania, supra,* where we observed that conciliation was the Congressionally preferred method of dispute resolution in employment discrimination cases and concluded that the plaintiff's premature resort to litigation in that case was "one factor to be considered by a court in determining whether equitable relief should be granted." 730 F.2d at 917.[2]

Marxe's argument is unpersuasive for at least two reasons. First, while Congress' preference for conciliation justified making premature litigation a factor to be weighed against the granting of a preliminary injunction to the plaintiff in *Moteles,* it does not provide a rationale for treating one in Marxe's position more favorably than any other applicant for *pendente lite* relief with respect to the required showing of irreparable injury. Second, even if we were persuaded that the circumstances of Marxe's case are sufficiently special to warrant exceptional treatment, we believe her suggestion is simply not feasible.

Marxe does not define the concept of a "lesser showing" other than to indicate that it occupies a middle ground between a presumption of irreparable injury without proof thereof and the showing normally required of plaintiffs seeking preliminary

---

**2.** Under the EEOC regulations, the Commission may issue a right-to-sue letter prior to the expiration of 180 days if the Commission predicts that it "will be unable to complete its adminis-

trative processing" within 180 days. 29 C.F.R. § 1601: 28(a)(2) (1983). The plaintiff in *Moteles* had secured a right-to-sue letter under this regulation.

injunctions. There is a good reason for this deficiency. A decision on an application for a preliminary injunction requires a delicate exercise of equitable discretion. *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir.1976); *Constructor's Ass'n of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978). Courts may consider the seriousness of the alleged irreparable injury to the plaintiff; the likelihood that injury will occur; the magnitude of the plaintiff's likelihood of success; the likelihood of injury to the defendant, third parties, or the public generally; how serious any such injury would be; and how the public interest will be affected. All of these factors often are weighed together in the final decision and the strength of the plaintiff's showing with respect to one may affect what will suffice with respect to another. *Constructors Ass'n of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978); *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir.1976); *Delaware River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 923-4 (3d Cir.1974). In this context, like Marxe, we are unable to fashion a workable definition of the reduced standard she supports. We are confident that acceptance of her suggestion for retaliation cases, or some subset thereof, would only lead to hopeless confusion.

■■■ In the absence of a legislative mandate to the contrary [3] or special circumstances counseling a different approach,[4] this court has consistently held that an affirmative showing of irreparable injury to a private plaintiff, or imminent threat thereof, is a necessary prerequisite to the issuance of a preliminary injunction. *Mo-*

*teles, supra; A.O. Smith, supra.* Marxe does not ask us to depart from this rule in her case. Since we reject her contention that the record is sufficient in this respect, the preliminary injunction must be vacated.

### C. Irreparable Injury to Third Parties

As we have noted, Marxe concedes that she has the burden of showing that she has experienced or is imminently threatened with irreparable injury. Moreover, she expressly acknowledges that she "did not contend below, and does not contend here, that there must be preliminary relief in ... every retaliation case." Appellee's Brief at 32. Because Marxe has taken these positions, we have no occasion to comment on the argument advanced in the EEOC's *amicus* brief. We will leave that argument for another day but deem it prudent to do so expressly.

The EEOC maintains that reinstatement *pendente lite* should be available to every plaintiff in a retaliatory discharge case, whether or not there is evidence of irreparable injury *to the plaintiff*, because such relief is necessary to prevent injury *to third parties* employed by the same employer. In its view, this court should find as a legislative fact that employees are discouraged from attempting to enforce their own rights under Title VII when a fellow employee is discharged following the filing of a Title VII claim and that, based upon that legislative fact, we should fashion a rule of law that a plaintiff in a retaliation case is entitled to immediate reinstatement upon a showing of a likelihood of success. This argument has been addressed and rejected by the Court of Ap-

---

**3.** We have had a number of occasions to apply federal statutes expressly providing injunctive relief without a showing of irreparable injury. *See e.g., Gov't of the Virgin Islands, Dept of Conservation v. Virgin Islands Paving, Inc.*, 714 F.2d 283, 286 (3rd Cir.1983) (No showing of irreparable harm required under Air Pollution Control and Coastal Zone Management Acts); *United States Postal Service v. Beamish*, 466 F.2d 804, 806 (3d Cir.1972) (No irreparable harm showing under 39 U.S.C. § 3007).

**4.** Courts need not find irreparable harm when acting to protect their jurisdiction. *See In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir.

1984) ("traditional standards for injunctive relief ... do not apply to the issuance of an injunction against a vexatious litigant"); *Pavilonis v. King*, 626 F.2d 1075, 1078 (1st Cir.), *cert. denied* 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980) (same). This court has also held that the circumstances presented by copyright infringement cases are sufficiently unique as to obviate the necessity of an irreparable harm showing. *See e.g., Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir.1983), *cert. denied*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984).

peals for the Second Circuit. *Holt v. Continental Group, Inc., supra,* at 91. *See also Stewart v. United States I.N.S.,* 762 F.2d 193, 200 (2d Cir.1985). *Holt* held that the likelihood of injury to third party employees was a relevant factor in deciding whether a preliminary injunction should be ordered, but only if there is affirmative evidence from which it can be inferred that a chill of Title VII protected activity has occurred or is threatened. *See also Garcia v. Lawn,* 805 F.2d 1400 (9th Cir.1986) (remanding with the suggestion that third party chilling can constitute irreparable harm).

The issue raised by the EEOC differs from the issue we have today addressed primarily because it is arguably more difficult to prove a chill of potential Title VII claimants than to prove a chill to potential Title VII witnesses. We express no view on the proper resolution of the issue raised by the EEOC.

## III. CONCLUSION

We conclude that evidence of a discharge of a Title VII plaintiff after the filing of his or her claim is relevant evidence tending to support a claim that potential witnesses will be intimidated from cooperating and in this way will preclude the plaintiff from proving his or her case. We further conclude, however, that such evidence will not alone support a finding that intimidation has occurred or is imminent. Since there is no other probative evidence of intimidation in this record, we hold that the district court abused its discretion in its finding of a threat of irreparable injury to Marxe and that the preliminary injunction requiring her reinstatement cannot stand. We will reverse and remand with instructions to vacate the preliminary injunction.