Raymond NACCARATI, Plaintiff,

v.

**WILKINS TOWNSHIP,
PENNSYLVANIA,**
Defendant.

Civ. A. No. 93–124.

United States District Court,
W.D. Pennsylvania.

Feb. 11, 1993.

James B. Lieber, Lucinda A. Bush, Lieber & Hammer, Pittsburgh, PA and Stefan Presser, American Civil Liberties Foundation of PA, Philadelphia, PA, for plaintiff.

Vicki L. Beatty, Meyer, Darragh, Buckler, Bebeneck & Eck and John M. Means, Markel, Schafer & Means, Pittsburgh, PA, for defendant.

## OPINION

DIAMOND, Chief Judge.

On January 25, 1993, the plaintiff filed a § 1983 action for injunctive and declaratory relief and simultaneously filed a motion for a preliminary injunction and/or a temporary restraining order.[1] Plaintiff, chief of police for the defendant township, seeks to have the defendant enjoined from disciplining him for declaring and pursuing a candidacy for district justice.[2] Plaintiff contends that the power vested in the defendant by the legislature which enables the township to reprimand or discharge him for undertaking active candidacy for public office violates his First and Fourteenth Amendment rights. The defendant strenuously opposes the motion.

Plaintiff filed an emergency motion for injunctive relief because he must file letters of intent by February 12, 1993, in order to be qualified to receive the endorsement from the local democratic party, and must circulate and file his nominating petitions with the Allegheny County Bureau of Elections on or before Tuesday, March 9, 1993. Plaintiff wishes to "cross-file" and be placed on both the republican and democratic tickets. Plaintiff seeks to restrain the defendant from acting pursuant to the Pennsylvania first-class township code which provides:

> No person employed in any police or fire force of any township shall be suspended, removed or reduced in rank except for the following reasons: ... (6) engaging or participating in conducting of any political or election campaign otherwise than to exercise his own right of suffrage.

53 P.S. § 55644(6). Plaintiff claims that he will be disciplined, and most likely fired, if he pursues his candidacy for district justice.[3] Plaintiff contends that the threat of enforcing the statute will result in the inability of plaintiff to meet the appropriate deadlines to become a candidate in the May, 1993, primary election, or injure his chances of a successful campaign if discipline charges are initiated during the campaign.

Plaintiff began pursuing his candidacy on February 11, 1992, when he filed with the Allegheny County Bureau of Elections a political registration statement indicating his intention to run in 1993. Plaintiff inquired as to whether the defendant would act pursuant to the statute if plaintiff announced and pursued a candidacy. On April 20, 1992, plaintiff received a memorandum opinion by the

---

1. Because there was sufficient time for the opposing party to be heard, the court will treat the motion as an emergency motion for a preliminary injunction. See Fed.R.Civ.P. 65.

2. Plaintiff is qualified to seek and hold the office.

3. Plaintiff has been employed by the defendant as a police officer since 1968 and has been the chief of police since 1985. In May 1988, Plaintiff was demoted to patrolman by the defendant for actively supporting the candidacy of another who was running for township commissioner. A civil service hearing was held and plaintiff was reinstated as chief of police. Defendant appealed the decision to the Allegheny Court of Common Pleas. Two and one-half years later the matter was settled out of court. Plaintiff alleges that this prior action indicates that defendant will again initiate discipline proceedings if he pursues his candidacy.

solicitor of the defendant stating that the statute is broad and provides a basis for reprimand by the defendant against an officer who campaigns for elected office. It also stated that the statute prohibited any police officer from running for political office or engaging or participating in election campaigns and that if anyone were to file a complaint, it would fall upon the Township Board of Commissioners to file or refrain from filing charges against the officer violating the statute. *See* Exhibit C to Plaintiff's Complaint. Plaintiff does not contest the fact that the Township has not made a final determination as to whether any action will be taken if plaintiff actively pursues the candidacy.

Plaintiff asserts that unless the defendant is restrained, it will enforce the statute in question and unconstitutionally penalize him in violation of his First Amendment rights of freedom of association and freedom of speech. Plaintiff asserts that the statute is overbroad and vague. Plaintiff also challenges the statute under the Equal Protection Clause on the basis that other officers similarly situated are not similarly restricted from engaging in or participating in election campaigns. Plaintiff's complaint requests this court to declare the statute unconstitutional and restrain the defendant from enforcing it.

■ Requests for injunctive relief invoke the court's equitable discretion. Resolving such motions require a delicate balance of equitable factors. There are four general requirements: (1) the moving party must produce evidence sufficient to convince the court that in absence of the relief he will suffer imminent irreparable injury; (2) the moving party must show a likelihood of success on the merits; (3) that granting the relief will not result in greater harm to the other party; and (4) that granting the relief will be in the public interest. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975); *ERCI v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987) (*citing SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1254 (3d Cir.1985)). All of the above factors are balanced with regard to any final decision and the strength

of any one factor may affect the necessary showing with regard to another. *Marxe v. Jackson,* 833 F.2d 1121, 1128 (3d Cir.1987).

### A. *Irreparable Injury*

■ Plaintiff has failed to establish a clear showing of irreparable harm. First, the statute in question does not prohibit him from running for office. Second, plaintiff's claimed injury is speculative. Third, plaintiff has an adequate remedy at law if he should be disciplined and the statute is ultimately determined to be unconstitutional. Finally, plaintiff has failed to show any immediate injury.

■ A clear showing of an imminent irreparable injury is an absolute necessity. *Marxe,* 833 F.2d at 1128 (*citing Moteles v. University of Pennsylvania,* 730 F.2d 913 (3d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984) and *A.O. Smith Corp. v. F.T.C.,* 530 F.2d 515, 525 (3d Cir. 1986)); *ECRI,* 809 F.2d at 226. "Establishing a risk of irreparable harm is not enough." A "clear showing of immediate irreparable injury" is required. *ECRI,* 809 F.2d at 226 (*citing Continental Group, Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 359 (3d Cir. 1980)). "The 'requisite feared injury must be irreparable—not merely serious or substantial,'" and it "must be of a peculiar nature, so that money cannot atone for it." *Id.* (*citing Glassco Hills,* 558 F.2d 179, 181 (3d Cir. 1977)).

To establish the requisite imminent irreparable injury, plaintiff cites *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976), for the well-established proposition that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Plaintiff contends that his state of limbo between being prohibited from declaring candidacy and facing the threat of losing his job and/or suffering possible humiliation during his campaign for exercising his First Amendment rights constitutes irreparable injury. The plaintiff alleges that if he should be disciplined during the course of his campaign, that discipline would have a negative effect on his likelihood of success in obtaining

elective office.[4] Plaintiff asserts that he has no adequate remedy at law if he is disciplined for engaging in such political activities.

The defendant vigorously contests the plaintiff's assertion of irreparable harm. First, the defendant points to the fact that it has made no formal decision as to whether it will discipline and/or fire the plaintiff, should he fulfill his intentions in campaigning for office. Second, defendant contends that even if it chooses to enforce the statute, plaintiff has an adequate remedy at law in money damages under § 1983 if the statute should later be determined to be unconstitutional. Third, the defendant notes that plaintiff is not precluded from running for office but merely is faced with a decision: "to resign to run" or to forego running and remain in his present employment. Fourth, the defendant contests the immediacy of the harm in that as to the February and March deadlines, plaintiff's inability at this time to seek the endorsement of a political party and to be on the primary ballot in May do not preclude his becoming an independent candidate and being placed on the ballot in August, 1993.

■ A violation of a constitutional right is not necessarily synonymous with the showing of irreparable harm necessary for sustaining a preliminary injunction. *Hohe v. Casey,* 868 F.2d 69, 73 (3d Cir.), *cert. denied,* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). The assertion of First Amendment rights does not automatically require a finding of irreparable injury. The plaintiff must show that there is "a chilling effect on free expression." *Id.* Irreparable injury is only established where money damages are difficult to ascertain or are clearly inadequate.

■ The loss of employment or compensation does not provide the requisite showing of imminent irreparable harm. *See Marxe,* 833 F.2d 1121 (3d Cir.1987) (improper to grant preliminary injunction to employee alleging retaliatory discharge under Title VII, even where employee alleged chilling effect on ability to obtain cooperation of potential witnesses); *Roberts v. Van Buren Public Schools,* 731 F.2d 523 (8th Cir.1984) (teacher wrongfully discharged for exercise of First Amendment rights not entitled to injunctive relief where § 1983 action would provide adequate remedy, including back pay and reinstatement, if successful on the merits); *Morton v. Beyer,* 822 F.2d 364, 372 (3d Cir.1987) (injury of suspension without pay held insufficient to establish a preliminary injunction for public employee's reinstatement). The Third Circuit has continually noted that where the claimed injury actually constitutes a loss of money, the loss is capable of recoupment in an action at law. *In re Arthur Treacher's Franchise Litigation,* 689 F.2d 1137, 1145 (3d Cir.1982); *A.O. Smith Corp. v. Federal Trade Commission,* 530 F.2d 515, 525 (3d Cir.1976).[5]

It is clear that the statute does not prohibit plaintiff from running for office. If plaintiff resigns from the police force, he may pursue any candidacy he desires. It is the right to remain employed as a police chief while running for public office that is asserted. There is no such constitutional right.

■ Plaintiff's alleged First Amendment injuries are speculative. Plaintiff's assertion that his campaign is being hindered by the township's inability to determine what course of action it will take against plaintiff, and his assertion that should he be disciplined during the campaign, such discipline would have a negative effect on his campaign, are speculative. The assertions that the present dispute with the defendant is inhibiting his ability to raise money and to get his message out are

---

4. Plaintiff submits three affidavits from three local committee persons/local politicians who attest that the current dispute is having negative effects on the plaintiff's ability to raise money and proceed with his campaign, and that further repercussions will further hinder the plaintiff's public image and his ability to successfully pursue his candidacy.

5. The Third Circuit has observed that the standard remedy for violation of 42 U.S.C. § 1983 is compensatory damages. *Hohe,* 868 F.2d at 73 (*citing Carey v. Piphus,* 435 U.S. 247, 256, 98 S.Ct. 1042, 1048, 55 L.Ed.2d 252 (1978) (to the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages)).

likewise speculative. These assertions present a mere possibility that the plaintiff will be harmed if he is disciplined by the township for seeking judicial office. They also assume that plaintiff would otherwise be successful in his campaign. The mere possibility that the plaintiff might lose votes from any future discipline is not enough to support a preliminary injunction. *Cf. Marxe*, 833 F.2d at 1126.

Furthermore, if the statute were ultimately found to be unconstitutional, it is clear that if plaintiff were to be disciplined by the township for engaging in the campaign, the plaintiff would be entitled to file a § 1983 action for money damages, reinstatement and declaratory relief against the individuals who disciplined him. Thus, the loss of his job is insufficient as a matter of law to uphold a finding of irreparable harm.

Finally, the plaintiff has failed to show the requisite immediacy of the alleged injury. The alleged injuries of being unable to gain the support of the democratic party and being prevented from being placed on the democratic primary ticket are speculative.[6] Plaintiff can be placed on the ballot as an independent candidate as late as August 1993. *See* 25 P.S. § 2600 *et seq.* Plaintiff may be able to win in November even if he runs as an independent. Thus, it is not clear that plaintiff will be immediately injured by failing to make the February 12, 1993, deadline for filing letters of intent.

### B. *Likelihood of Success on the Merits*

Plaintiff has failed to establish a likelihood of success on the merits. Plaintiff's constitutional challenges have been repeatedly rejected under similar circumstances. Plaintiff lacks standing to challenge the statute as vague, the statute is not fatally overbroad and the equal protection challenge is misplaced.

In 1941, the Pennsylvania legislature created civil service protection for police officers of boroughs, incorporated town and township of the first class except for those subdivisions which employ fewer than three officers. *See* 53 P.S. § 53251. Police officers were given the protection of civil service through the creation of local civil service commissions consisting of three elected officials from the subdivision. *See* 53 P.S. § 53252.[7] Police officers of the subdivision are to be removed from office or disciplined only for legislatively mandated causes. *See* 53 P.S. §§ 53270,[8] 55644. Thus, plaintiff is a civil service employee of the defendant and enjoys the protection created by a merit system. *See* 53 P.S. § 55625 *et seq.*

There is overwhelming support for the proposition that the government has an appropriate and substantial interest in proscribing certain political activities by public employees. In *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), the Supreme Court reviewed a challenge to the federal Hatch Act which prohibited federal employees from taking an "active part in political management or in political campaigns." *Id.* at 94, 67 S.Ct. at 566. The court noted that partisan politics in the merit system threatens to undermine effective administration and creates a danger to government services in that political rather than official effort might become the predominant factor for determining employee advancement. *Id.* at 97–98, 67 S.Ct. at 568–69. The Court held that Congress may prohibit classified employees from becoming active party officers or party workers. *Id.* at 99, 67 S.Ct. at 569. Congress can regulate the partisan political conduct of government employees in the service sector "within reasonable limits." Furthermore, any determinations as to the type of government workers whose conduct is to be regulated, such as distinctions between administrative and industrial workers, are determinations to be left to the legislature. *Id.* at 102, 67 S.Ct. at 570.

---

**6.** Plaintiff may also be able to avoid any perceived negative campaign effects from his present dispute with his employer by resigning to run in the face of any disciplinary action and seeking redress after the election under § 1983 if necessary.

**7.** The civil service system for police is now also codified in both the borough and first class township codes. *See* 53 P.S. § 46172; 53 P.S. 55626 *et seq.*

**8.** The stated causes in this statute are identical to those listed in the statute plaintiff attacks.

The Supreme Court reaffirmed the constitutional validity of the federal Hatch Act in *United States Civil Service Commission v. National Assn. of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). There the district court had declared the language "political activity" was vague and overbroad. The Court determined that the legislative history of the Hatch Act and the civil service regulations supplementing the Act removed any challenge to the legislation based upon vagueness and overbreadth. The Court reiterated that "a major thesis of the Hatch Act is that to serve this great end of government—the impartial execution of the laws—it is essential that federal employees, for example, not take formal positions in political parties, not undertake to play substantial roles in partisan political campaigns, and not run for office on partisan political tickets. Forbidding activities like these will reduce the hazards to fair and effective government." *Id.* at 565, 93 S.Ct. at 2890.[9] The appearance of avoiding the "practicing [of] political justice" in the civil service system is a legitimate governmental concern. *Id.*

In a companion case, *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), the Supreme Court upheld the constitutional validity of Oklahoma's "mini-Hatch Act" which restricted partisan political conduct by state civil service employees. A group of Oklahoma state employees brought a class action to declare the legislation invalid as overbroad and vague. The appellants before the Court had been charged with actively engaging in partisan politics, including the solicitation of campaign funds from fellow workers for the benefit of their superior. Because the appellants' conduct fell squarely within the 'hard core' proscriptions of the statute, a challenge under the overbreadth doctrine was specifically rejected. Likewise, a challenge based upon vagueness was rejected because the terms of the statute were such that ordinary persons exercising ordinary common sense could sufficiently understand what was proscribed by the statute.[10] *Id.* at 607, 93 S.Ct. at 2913. The Court reiterated that there is a valid and important state interest in attracting qualified people to civil service positions by insuring job security, eliminating the vicissitudes of the elective process and protecting the employees from political extortion. *Id.* at 606, 93 S.Ct. at 2912.

Similarly, in *Commonwealth ex rel. Specter v. Moak*, 452 Pa. 482, 307 A.2d 884 (1973), the Pennsylvania Supreme Court upheld the city of Philadelphia's authority to regulate the political activity of city employees. All city employees were required to resign before running for public office. Two assistant district attorneys sought to become judicial candidates for the court of common pleas. After concluding that the assistant district attorneys were city employees, the court identified a number of factors which justify the city's interest in prohibiting active candidacy by its employees: the opportunity for undue influence and intimidation with regard to subordinate employees; candidates may neglect official duties in the interest of furthering their candidacy; the interest of efficient and impartial administration of public business; the possibility of coercion on a candidate's superiors due to the office that he is seeking; and the overall detrimental effect on the morale and efficiency of all other employees who were exposed to the effects of the campaign activities. *Id.*, 307 A.2d at 889–90 (*citing Johnson v. State Civic Service Department*, 280 Minn. 61, 157 N.W.2d 747, 751–52 (1968)). The court concluded that the above interest was compelling and that the "resign to run" rule was the least drastic means to achieve the desired end of assuring city residents that the discharge of official duties by city employees would continue to be efficient and impartial. Likewise, the Pennsylvania Supreme Court's prohibition

---

9. One of the provisions established by 5 C.F.R. § 733.122 prohibited actively campaigning for public office through the following language: "(b) Activities prohibited by paragraph (a) of this section include but are not limited to—(6) Becoming a partisan candidate for, or campaigning for, an elective public office." *Id.* at 577–78, 93 S.Ct. at 2897.

10. One provision directly under review provided that no person in the classified service shall be "a candidate for nomination or election to any paid public office." *Id.* at 603, 93 S.Ct. at 2911.

against political activities by court-appointed employees has been upheld in the face of First Amendment challenges brought by a probation officer seeking to run for district justice. *See Giglio v. Supreme Court of Pennsylvania,* 675 F.Supp. 266, 270–71 (M.D.Pa.1987).

Government has an even more substantial interest in restricting the political activities of police officers. *Pollard v. Board of Police Com'rs,* 665 S.W.2d 333, 339 (Mo. *en banc* 1984), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3534, 87 L.Ed.2d 657 (1985) (*citing Otten v. Schicker,* 492 F.Supp. 455, 457 (E.D.Mo. 1980), *aff'd,* 655 F.2d 142 (8th Cir.1981)). The integrity and discipline of the force is a primary public concern. *Gasparinetti v. Kerr,* 568 F.2d 311 (3d Cir.1977), *cert. denied,* 436 U.S. 903, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978). Public confidence in the law enforcement institution is a very important factor. *Id.* As the Supreme Court noted in *United Public Workers v. Mitchell, supra,* the legitimate authority of government to regulate the political activity of police officers has been recognized since before the turn of the century. *United Public Workers,* 330 U.S. at 99 n. 34, 67 S.Ct. at 569 n. 34; *see also Pollard,* 665 S.W.2d at 339.

Against the above backdrop of authority, the plaintiff challenges the instant statute asserting that the prohibition—"engaging or participating in conducting of any political or election campaign otherwise than to exercise his own right of suffrage"—is vague and overbroad.

A statute is vague when it "either forbids or requires the doing of an act in terms so vague that men of ordinary intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Broadrick,* 413 U.S. at 607, 93 S.Ct. at 2913; *Aiello v. City of Wilmington, Delaware,* 623 F.2d 845, 850 (3d Cir.1980). A vague statute violates due process because it neither affords fair notice to potential violators nor provides appropriate standards for enforcement. *Aiello,* 623 F.2d at 850. Statutory vagueness is problematic where it may chill the exercise of protected First Amendment

rights. *Rode v. Dellarciprete,* 845 F.2d 1195, 1199 (3d Cir.1988) (*citing Baggett v. Bullitt,* 377 U.S. 360, 372–73, 84 S.Ct. 1316, 1322–23, 12 L.Ed.2d 377 (1964)).

A party must have standing to bring a vagueness challenge against an otherwise properly enacted statute. "[W]hen a litigant's conduct clearly falls within the permissible purview of a statute, such an individual lacks standing to challenge the statute for vagueness, even though the statute may be vague as applied to others." *Aiello,* 623 F.2d at 850; *Rode,* 845 F.2d at 1200. There is no question that the instant statute seeks to prohibit the political activity of actively participating in a campaign for elected office. Here the plaintiff wishes to engage in active candidacy for public office. The plaintiff seeks this injunction on the basis that it is necessary to gain a party endorsement in order to wage a successful campaign. The plaintiff's actions of contacting the township solicitor immediately after indicating his intention to seek the office of district justice in 1992 evidence plaintiff's understanding that the conduct which he seeks to engage in falls directly within the 'hard core' of the statute's proscriptions. Thus, plaintiff lacks standing to challenge the statute on vagueness grounds because it clearly prohibits the active candidacy for elected office in a partisan election.

The standing requirement for overbreadth is somewhat more relaxed. "Overbreadth challenges may be brought even by claimants whose conduct is not constitutionally protected where hypothetical third parties might be chilled in the exercise of their First Amendment rights by the statute." *Id.* (*citing Aiello,* 623 F.2d at 860). A statute is overbroad if it "does not aim specifically at evils within the allowable area of state control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech." *Rode,* 845 F.2d at 1200 (*quoting Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940)). Where the statute regulates both conduct and speech, as in the matter *sub judice,* the Supreme Court has held that the "over-

breadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2917; *see also Rode*, 845 F.2d at 1200.[11] In *Broadrick*, the Court noted that the Oklahoma statute need not be discarded in *toto* merely "because some persons' arguably protected conduct may or may not be caught or chilled by the statute." The court noted that the statute attempted to regulate in an even-handed manner, its scope had been narrowed by administrative interpretation and the litigant's conduct was clearly within the statute's permissible scope. *Broadrick*, 413 U.S. at 616–18, 93 S.Ct. at 2918–19. Thus, in the present context the overbreadth doctrine is applicable if "the enactment reaches a *substantial* amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (emphasis added).

 The plaintiff argues that the phrases "engaging in," "participating in" and "any political or election campaign" sweep far too much within the statute's ambit of prohibition.[12] However, in the context of a facial overbreadth challenge, a court will not declare a statute invalid where a limiting construction has been or could be placed on the challenged statute. *Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916. No state court has construed the statute in the face of a constitutional challenge.[13] Here the statute permits first class townships to sanction police officers for actively engaging in election campaigning. The plaintiff's anticipated conduct clearly falls within the legitimate sweep of the statute. The statute is aimed at the

particular evils that active involvement in election campaigns may visit on the appearance of police services to the community. The statute clearly prohibits active campaigning in a political or election campaign. The wording of the statute indicates that it is only aimed at political or election campaign activities, an activity which can be legitimately regulated. This construction renders the statute constitutional.

Moreover, where the possible impermissible application of a statute is likely to be relatively low, "it may be more appropriate to guard against the statute's conceivably impermissible applications through case-by-case adjudication rather than through facial invalidation." *Aiello*, 623 F.2d at 854. Beyond the prohibition against election campaigning, the plaintiff has presented no evidence that the statute has been used to suppress other forms of constitutionally protected speech. At this juncture, it appears that a case-by-case approach would be the appropriate course.

Plaintiff argues that there are more narrowly tailored regulations available to protect the state's interest in regulating campaigns for district magistrate. Plaintiff cites the ethical rules embodied in 42 Pa.C.S. District Justices Standards of Conduct Rule 15: *Public Office and Political Conduct*, which curtail the partisan activity in which a candidate for district justice may engage and Pennsylvania's "mini-Hatch Act" which prohibits certain political conduct by classified civil service employees. Pursuant to its authority to implement legislatively granted powers, the defendant enacted a resolution on January 24, 1993, adopting the prohibitions and per-

---

**11.** Although the distinction between speech and conduct is sometimes difficult to draw, *see Aiello*, 623 F.2d at 853 n. 17, it appears that the facts in instant action are closely analogous to those in *Broadrick* so as to invoke the application of this rule.

**12.** The court notes that the following passage is instructive as to this argument:

there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in

terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.

*Broadrick*, 413 U.S. at 609, 93 S.Ct. at 2914.

**13.** The Commonwealth Court, however, has upheld the enforcement of identical language in the borough code, 53 P.S. § 46190, and has concluded that the language prohibits a police officer from running for the office of district magistrate. *See Appeal of Merrills*, 25 Pa.Cmwlth. 577, 360 A.2d 771 (1976).

missive conduct of 71 P.S. § 741.905b [14] as its interpretation of the challenged statute's purview. Plaintiff argues that the township code provision is in conflict with the restrictions in the civil service code and therefore the township code must be discarded.[15] Plaintiff contends that because the township code contains a prohibition on all campaign activities, while the civil service code contains a listing of permissible First Amendment activities, the township code is too restrictive.

The issue raised by the above argument is that the legislature does not possess the authority to extend the ability to limit active campaigning by police officers who enjoy a form of civil service protection, or that it is unnecessary to do so. However, it is clear that all police officers in first class townships, incorporated towns and boroughs (except those subdivisions employing fewer than three officers) are treated as civil service employees. Police officers of these subdivisions are granted special police civil service protection; the general civil service code is not applicable to this class of police officers. It follows that the legislature can extend the concomitant authority to protect against one of the prime political influences which corrupt the merit system. Furthermore, because the legislature's power to proscribe political campaigning for elective office by general civil service employees has been clearly upheld, it appears that the legislature can likewise legitimately determine which forms of local government possess the state's interest and need such authority to regulate employees who are similarly situated.[16]

■ The plaintiff also challenges the statute on equal protection grounds. The plaintiff presents affidavits which attest to the fact that certain police officers have been permitted to run for the minor judiciary while remaining chief of police or patrolman in a first class township. Plaintiff points to the fact that only first class townships, incorporated towns and boroughs are provided with the express authority to sanction officers for campaigning for elected office, and for subdivisions with fewer than three officers, there is no such expressed authority. Although third class city police officers are subject to the civil service restrictions, plaintiff points to the fact that the legislature placed no direct prohibition on third class city officers. The result, the plaintiff argues, is unequal treatment of a class which is not rational and results in discriminatory enforcement.

The plaintiff is a member of a class of officers employed by first class townships. These officers and officers of boroughs and incorporated townships employing three or more officers are given civil service protection. Within this legislatively created class, all officers are treated equally. Subdivisions with fewer than three officers do not fall within the police civil service system. Those officers are only granted tenure protection. See Act of June 15, 1951, P.L. 586, 53 P.S. §§ 811–815. Thus, the legislature has extended the authority to prevent active political or election campaigning to those officers which enjoy the attributes of police civil service protection. This distinction can hardly be labeled as arbitrary or irrational.

Furthermore, the Supreme Court has noted that "the legislature must have some leeway in determining which of its employment

---

**14.** The civil service code also prohibits a classified employee from "becoming a candidate for, or campaigning for, an elective public office in a partisan election." 71 P.S. § 741.905b.

**15.** The first class township code is not, however, in conflict with 53 P.S. § 53270 which governs the removal of all similarly situated officers which are given police civil service protection. The two statutes are identical. Furthermore, the first class township code and the general civil service code both prohibit campaigning for elected office. See note 14, supra.

**16.** Plaintiff's eleventh hour supplement to the motion for emergency injunctive relief alleging that the statute is a content-based restriction is without merit. The fact that plaintiff attended two separate fund-raisers for local politicians, which the township commissioners also attended, and the township took no action because of such activity, does not rise to the level of discriminatory enforcement. Nor does the fact that one township commissioner privately stated that he would support plaintiff in a candidacy. This type of activity can hardly be said to fall within the purview of the statute in question. These facts do not establish any state action by the defendant. The plaintiff has presented no allegation that the defendant has arbitrarily permitted some police officers to openly run for office while denying others the same opportunity.

positions require restrictions on partisan political activities and which may be left unregulated." *Broadrick*, 413 U.S. at 607 n. 5, 93 S.Ct. at 2913 n. 5 (*citing McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)). "A state can hardly be faulted for attempting to limit the positions upon which such restrictions are placed." *Id.* The legislature has not expressly provided second class townships and boroughs with the authority to limit the political campaigning of their police officers. There is, however, no mandated police civil service system employed in those types of subdivisions either. This is precisely the type of deference that the Supreme Court noted in *Broadrick*. The plaintiff fails to explain why the legislature's determination that those forms of local government which are required to provide civil service protection to their police officers may not exercise the state's interest in prohibiting the effects of political campaigning from affecting this type of civil service system. Every officer within plaintiff's class is provided with the protection and is equally restricted from campaigning for public office.[17] Therefore, the court believes that plaintiff is not likely to succeed on the equal protection claim.

### C. Harm to the Defendant and the Public Interest

The adverse effect upon the opposing party will be great if the court grants a preliminary injunction. Granting such relief would also not be in the public interest.

In deciding whether to grant injunctive relief, the court should consider whether issuing a preliminary injunction would cause greater harm to the other party. The defendant notes that its interest and the public interest are the same. This court agrees. ■ Plaintiff contends that granting the injunction will not harm the defendant and therefore only a nominal bond should be required. The defendant contends that the issuance of a preliminary injunction will effectively undermine the interest of the township and the public in maintaining the integrity of the township's police force. The appearance of impropriety with regard to the integrity of the administration of police protection is a compelling governmental interest. The favoritism and partisan support inherent in a campaign can create an atmosphere for the improper distribution of police services and inject political influences into the internal administration of the defendant's police services. It is this appearance of impropriety that the statute in question is designed to protect against. The case law adequately establishes the validity of this interest. Thus, the defendant has a sufficient interest in avoiding the appearance of impropriety created by the activity in question. If this court were to grant injunctive relief, the very evils the statute is designed to protect against will be visited upon the defendant. Thus, the defendant will be irreparably injured and the public interest will not be served.

For the reasons stated above, this court finds that plaintiff has not established imminent irreparable harm or a likelihood of success on the merits. Also, if the relief requested is granted, the harm to defendant and the public interest will be great. Therefore, the motion for emergency injunctive relief will be denied.

---

17. Plaintiff's assertion that he falls within the same class as police officers employed by third class cities is likewise misplaced. Plaintiff is not within this legislatively created class. Furthermore, although there is civil service protection provided for such officers, these cities may discipline officers for "violation of ... any ordinance of the city, or regulation of the department...."

53 P.S. § 39408. A city's authority to prohibit its employees from campaigning for public office has been upheld. *See Moak, supra.* The legislature cannot be faulted for allowing cities to determine the scope and necessity of restrictions on the campaign activities of its various employees. *Id.*; Broadrick, supra.