**COAKLEY BAY CONDOMINIUM ASSOCIATION, Plaintiff**

v.

**THE CONTINENTAL INSURANCE COMPANY, Defendant/ Third-Party Plaintiff**

v.

**MARSHALL AND STERLING, INC., Third Party Defendant**

Civil No. 1990/182

District Court of the Virgin Islands

Div. of St. Croix

June 28, 1991

GORDON C. RHEA, ESQ. (ALKON & RHEA), St. Croix, V.I., *attorney for plaintiff*

DANIEL C. THEVENY, ESQ. (COZEN & O'CONNOR), Philadelphia, PA, and MATTHEW J. DUENSING, ESQ. (DUDLEY, TOPPER & FEUERZEIG), St. Thomas, V.I., *attorneys for Continental Insurance*

BRITAIN H. BRYANT, ESQ., St. Croix, V.I., and THOMAS GRAHAM, III, ESQ. (WICKER, SMITH, BLOMOVIST, TUTAN, O'HARA, McCOY, GRAHAM AND LANE), Ft. Lauderdale, FL, *attorneys for Marshall & Sterling*

BROTMAN, *Acting Chief Judge, Sitting by Designation*

## OPINION

The court has before it plaintiff's motion and defendant's cross-motion for summary judgment on the issue of insurance coverage. The insurance policy at issue was in effect at the time Hurricane Hugo struck St. Croix on September 17, 1989. Both parties agree that there are no material facts in dispute and that the court must make a legal determination as to whether the Coakley Bay Condominium Association (herein "Association") insurance policy with Continental covers property damage to the interior of condominium units owned by individual unit owners.

## FACTS AND PROCEDURAL BACKGROUND

At the time of Hurricane Hugo, Coakley Bay consisted of 108 condominium units in fourteen buildings, some of which were owned by the Association and some owned by individuals. After the hurricane, the Association submitted a claim to Continental for property damage caused by the storm. Its claim included damage to the exteriors of all the condominium buildings, plus damage to the interiors of those units owned by the Association and those owned by individuals. Continental denied that portion of the claim which included the cost to repair the interiors of individual units not owned by the Association.

Three documents constitute the terms of the insurance coverage in dispute. The basic insuring document is Form MP 0082, issued in July 1988 and extended thereafter through October 1989. The second document is an amendment Form MP 0461, entitled "Additional Property Provision," which was executed contemporaneously with the MP 0082. The third document is a typewritten endorsement dated May 2, 1989 and retroactively effective to August 1, 1988.

Form MP 0082 is a preprinted "Special Multi-Peril Policy" for condominiums. It is a standard form utilized in connection with providing property and liability coverage to condominium type properties. Section I of MP 0082, entitled "Property Covered," provides coverage to "buildings," defined as "structures" and, inter alia:

> (E) Fixtures, improvements and alterations comprising a part of the building and refrigerators, air conditioners, cooking ranges, dishwashers and clothes washers and dryers, contained within units, and owned by the named insured or unit-owner.

The parties agree that this provision allows coverage not only of fixtures, improvements and alterations, plus certain appliances, within units owned by the named insured, Coakley Bay Condominium Association, but also within those units owned separately by individuals.

The crux of the dispute concerns interpretation of the second document, Form MP 0461, captioned "SMP Condominium Endorsement (Additional Property Provisions)." The preprinted part of this endorsement states:

> The Section I Property Covered provisions of the policy of which this endorsement forms a part are amended as follows:

> 1. Except as provided in item 2. below, this policy does not cover fixtures, improvements and alterations comprising a part

350

of the building and refrigerators, air conditioners, cooking ranges, dishwashers contained within units and owned by a unit-owner. This provision does not apply to any property described above, in which each of the condominium unit-owners has an undivided interest.

2. If other than item 1. above, specify:

At this point in the form, there appears a typewritten addition, which states:

Fixtures, improvements and alterations comprising a part of the building and refrigerators, air conditioners, cooking ranges, dishwashers and clothes washers and dryers; Swimming Pool; Restaurant Building and Sewer Plant.

This typewritten addition was completed by third-party defendant Marshall & Sterling, Continental's agent.

The third document is an endorsement dated May 2, 1989, which provides:

In consideration of the premium charged and in compliance with the declaration to the By-Laws, it is hereby understood and agreed that coverage afforded under MP0461 is applicable only as respects property owned in common by the association.

It is further understood and agreed that the deductible applicable to the interior of these units owned by the association is $250 per occurrence.

The court also takes note of the declaration and amended declaration to the Association's by-laws, with which the May 2 endorsement intended to comply. The relevant sections of those documents define the term "unit" by giving a detailed description of the dimensions of the interior space of the condominium buildings.[1] Declara-

---

[1] The definition of "units," entitled "Dimensions of Units," states:

Each unit consists of the area measured horizontally from the unit side of the exterior concrete walls of the Buildings to the unit side of the walls and/or partitions separating such units from steps . . . or other common or limited common areas, and where walls and/or partitions separate such unit from other units, to the side of such walls and/or partitions facing such units; vertically, each unit consists of the space between the top surface of the floor and the under surface of the ceiling, and shall include the balcony and the rear landing appurtenant to each unit.

Declarations at ¶ 7. In common parlance, therefore, a unit consists of the bare walls and everything contained within them.

351

tion at ¶ 7. They also define "common areas and facilities" as consisting of "the entire property including all parts of the Buildings other than the units. . . ." Declaration at ¶ 8. Under the paragraph concerning insurance, the declarations state:

> The Condominium, through its Board of Directors, shall purchase an insurance policy insuring the building and improvements erected upon the property, all fixtures and personal property owned in common by the unit owners . . . against loss or damage by fire and hazards covered by windstorm and extended coverage endorsements . . . .
>
> Condominium parcel owners may obtain insurance coverage at their own expense upon their own personal property and for their personal liability and living expense(s).

Declaration at ¶ 20.

The above terms have led both parties to argue that the policy's language is clear and unambiguous, though they differ, of course, on the proper outcome. Both parties agree that Item 1 of MP 0461 excludes from coverage the fixtures, improvements and alterations, etc. of individually owned units except as modified by Item 2. And both parties agree that Item 2 gives the parties an opportunity to tailor the contract to their specific needs by adding items that would otherwise be excluded from coverage. The Association argues that, since Item 2 repeats the same things that are listed in Item 1, everything excluded by Item 1 is returned to coverage by Item 2. Since Item 2 also adds the swimming pool, restaurant and sewer plant to the list, the net effect of MP 0461 is 1) to retain the coverage set forth in MP 0082 (fixtures, improvements and alterations plus appliances in Association *and* individually owned units) and 2) to add the swimming pool, restaurant and sewer plant to coverage.

The Association next argues that the May 2 endorsement expressly limits itself to the "coverage afforded under MP 0461." As argued above, the net coverage afforded under MP 0461 is of the swimming pool, restaurant and sewer plant. The purpose of the May 2 endorsement, it argues, is to specify that the additional coverage afforded under MP 0461 will continue only so long as the things so specified remain property owned in common by the Association. If the Association were to sell, for example, the restaurant building, coverage under the Continental policy would cease.

Futhermore, the Association argues, the second sentence of the May 2 endorsement can only be understood by referring to other sections of the policy. "Interior" is nowhere defined nor used in the four corners of the policy. The court must assume, the Association contends, that "interior" means something different from "fixtures, improvements and alterations comprising a part of the building," terms which are used frequently throughout the policy. The word "interior", in the May 2 endorsement must really mean "contents" or personal property, i.e., objects within the interior of the three structures added by MP 0461, such as swimming pool equipment, furniture and lighting fixtures.

Supporting this interpretation, it says, is the fact that the deductible specified elsewhere in the policy for personal property of units owned by the Association is $250. In contrast, the deductible for the buildings themselves, including fixtures, alterations and improvements, is $10,000. In sum, the effect of the May 2 endorsement is to clarify that coverage of the swimming pool, restaurant and sewer plant remains in effect only so long as they are owned in common by the Association. It also clarifies that the deductible applicable to the contents of these structures is $250.

Continental's interpretation of the contract rests principally on certain key language omitted in Item 2 of MP 0461. As explained above, Item 1 specifically excludes from coverage fixtures, improvements and alterations, etc. "contained within units and owned by a unit-owner." Item 2, which is designed to provide coverage otherwise excluded, omits the key phrase "contained within units and owned by a unit-owner." The net effect of MP 0461, therefore, is 1) to restate that fixtures, improvements and alterations in units owned by the Association are covered by the policy; 2) to add the swimming pool, restaurant and sewer plant to the list of items owned by the Association that are covered by the policy; and 3) to delete from coverage fixtures, improvements and alterations in individually owned units.

Continental next points to the clear language of the May 2 endorsement, which was intended to clarify that coverage afforded under MP 0461, i.e., fixtures, alterations and improvements of units owned by the Association as well as the swimming pool, restaurant and sewer plant, applies "only as respects property owned in common by the association." Continental implies that such a clarification serves to eliminate any confusion created by MP 0461 as to the appropriate scope of coverage of individually owned units.

353

The May 2 endorsement's reference to complying with the declaration of the by-laws is further evidence, Continental contends, that the policy does not cover anything within the bare walls of individually owned units. The declarations define "units" and "common areas and facilities" in a way that makes it clear that the interiors of the individual units are owned by the individual unit owner, unless, of course, the units are owned by the Association. More importantly, the paragraph in the declarations concerning insurance makes it clear, Continental argues, that the Board of Directors of Coakley Bay was responsible for purchasing insurance for the buildings, improvements, fixtures and personal property "owned in common by the unit owners . . . ." It was this provision of the declarations with which the May 2 endorsement sought to comply. Therefore, it argues, reading the May 2 endorsement in the context of the entire policy and the declarations makes its interpretation the only reasonable reading of the document.

## DISCUSSION

### A. *Rules of Interpretation of Insurance Contracts*

■  The interpretation, construction and legal effect of an insurance policy is a question to be determined by the court as a matter of law. Berne v. Aetna Insurance Co., 604 F.Supp. 958 (D.V.I.), aff'd, 782 F.2d 1026 (3d Cir. 1985). The Virgin Islands Code specifically provides that:

> Every insurance contract shall be construed according to the entirety of the terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement, or application attached to and made a part of the policy.

22 V.I.C. § 846. As a matter of general contract law, the Supreme Court has instructed that interpretation of a contract

> depends upon the meaning of the terms of the writing in which the parties must be assumed to have embodied and expressed their whole intention, and to have defined all the conditions of the contract. The court is not at liberty, either to disregard words used by the parties, descriptive of the subject matter, or to insert words which the parties have not made use of.

Harrison v. Fortlage, 161 U.S. 616, 618 (1895). The Third Circuit has commented that "the court will not make a different or better contract than the parties themselves have seen fit to enter into, and all

parts of the writing will be given effect if possible." Matter of Community Medical Center, 623 F.2d 864 (3d Cir. 1980). Therefore, it is proper for the court to consider the entire insurance policy agreement between the Association and Continental, including the May 2 endorsement, as well as the declarations in the Association's by-laws, to which the endorsement refers.

■ On the other hand, it would be improper for the court to consider extrinsic evidence in its determination of whether the policy language is clear and unambiguous. "When the parties to an agreement reduce their understanding to a writing that uses clear and unambiguous terms, a Court should look no further than the writing to give effect to that understanding". Brokers Title Company v. St. Paul Fire and Marine Insurance Co., 610 F.2d 1174, 1178 (3d Cir. 1979). Accord Berne v. Aetna Insurance Co., supra; Douglas Equipment Company v. Hartford Accident Indem. Co., 435 F.2d 1024 (7th Cir. 1970).

■ Since Continental, the author of the policy, seeks to exclude coverage through its interpretation of MP 0461 and the May 2 endorsement, the court must apply a rigorous standard: "Exclusionary clauses must be clear, definite and explicit." Playboy Enterprises v. St. Paul Fire and Marine Insurance, 769 F.2d 425, 428 (7th Cir. 1985); Gloucester Township v. Maryland Casualty Co., 668 F.Supp. 394 (D.N.J. 1987). Furthermore, an insurer's failure to "express clearly and unequivocally its intent" to exclude when it could have done so easily supports a conclusion that the relevant language is ambiguous. Buntin v. Continental Insurance Co., 583 F.2d 1201, 1206 (3d Cir. 1978).

■ It is well settled law that language in a contract is ambiguous if it is read in the context of the entire agreement and still susceptible to more than one meaning. "A provision of an insurance policy is ambiguous if reasonably intelligent (persons) on considering it in the context of the entire policy would honestly differ as to its meaning." Vlastos v. Sumitoma Marine Fire Insurance Co., 707 F.2d 775, 778 (3d Cir. 1983). "[A]ny reasonable interpretation offered by the insured, therefore, must control." McMillan v. State Mut. Life Assur. Co. of America, 922 F.2d 1073, 1075 (3d Cir. 1990). However, the Third Circuit has stressed that the court "should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." Northbrook Ins. Co. v. Kuljian Corp., 690 F.2d 368,

372 (3d Cir. 1982), quoting St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1980). Furthermore, "to establish an ambiguity, the insured must do more than proffer a competing *'possible* construction of the policy.' . . . Unless the insured's interpretation reflects an objectively reasonable reading of the disputed passage, the doctrine of contra proferentem[2] is inapplicable." New Castle County v. Hartford Accident & Indemnity Co., Nos. 89–3814, 90–3012, 90–3030 (3d Cir. Apr. 30, 1991) slip op. at 47–48 (citation omitted) (emphasis in original).

■ In this jurisdiction, once the court declares that the relevant language is ambiguous, the interpretation more favorable to coverage must prevail.

> It is settled that any ambiguity or contradiction in an insurance policy must be construed against the insurer, and in a manner more favorable to coverage. If there is more than one reasonable reading of a policy provision, as is the case here, that provision must be construed against the insurance company which has drafted it. Since the language of the endorsement in this case is ambiguous, and the effect of endorsement unclear, the endorsement must be interpreted . . . in a manner favorable to coverage.

Buntin v. Continental Insurance Co., 583 F.2d at 1207 (applying Virgin Islands law); see Little v. MGIC Indemnity Corp., 836 F.2d 789 (3d Cir. 1987); Holiday Homes of St. John v. Lockhart, 678 F.2d 1176 (3d Cir. 1982).

### B. *Is The Association's Interpretation Reasonable?*

■ The Association must offer a reasonable interpretation of its insurance policy in order for this court to find that the policy is ambiguous. Unlike the majority of cases interpreting insurance policies, where the court must examine only a phrase or even just one word to determine ambiguity, this court is confronted with the difficult task of interpreting an interlocking series of modifications and endorsements. As a result, the usual resource of case law interpreting a particular phrase or word in preprinted and industry-wide contracts is of no avail.

---

[2] The term is defined as a doctrine of construction used to construe ambiguous written documents most strongly against the person who selected the language. Black's Law Dictionary 296 (5th ed. 1979).

1. *Interpretation of MP 0082 and MP 0461:*

As a first step, the court observes that the plain language of MP 0082 affords coverage to fixtures, improvements and alterations, plus the enumerated appliances, in units owned by the Association as well as in units owned by individual owners. MP 0461, Item 1 then takes away that same coverage from individually owned units "[e]xcept as provided in item 2 below . . . ." Item 2 then provides the same list of items set forth in Item 1 and adds the swimming pool, restaurant building and sewer plant. The critical qualifying language missing from Item 2, however, is any reference to type of ownership.

Without such clarifying language, the MP 0461 is open to varying interpretations, both of which are reasonable. For example, as the Association argues, the list set forth in Item 2 could refer to individually owned units since the essential purpose of the clause is to add items otherwise excluded by Item 1, e.g., fixtures in individually owned units. Why else would the same list of items be restated in the face of clear language in Item 1 that "any property described above, in which each of the condominium unit-owners has an undivided interest" is not excluded from coverage? The addition of the swimming pool, restaurant and sewer plant is further evidence that Item 2 includes for purposes of coverage items that otherwise are impliedly or expressly excluded elsewhere in the policy.[3]

■■■ On the other hand, as Continental contends, the fact that the qualifying language in Item 1 referring to units "owned by a unit-owner" was omitted from the typewritten words in Item 2 would signify that coverage does not extend to fixtures, improvements and alterations, etc. in individually owned units. This is a perfectly reasonable interpretation. The fatal flaw for Continental and its agent, however, was that it failed to denote exactly to which type of units Item 2 referred. Because MP 0461 is designed to exclude coverage, Continental is obligated to use only clear and unambiguous words. See Gloucester Township, supra. It failed to do that, and as a result, the coverage afforded under MP 0461 is ambiguous.

---

[3] For example, swimming pools are explicitly excluded from coverage under MP 0082 at II.B. The policy makes no mention either way of a restaurant building or sewer plant, other than to state that buildings, which are covered, "shall include structures . . . ." MP 0082 at I.

## 2. *Interpretation of the May 2 Endorsement:*

The court must next look to the May 2 endorsement to determine whether Continental corrected the ambiguity inherent in MP 0461, thereby clearly excluding from coverage the interiors of individually owned units. The endorsement states, in part: "[C]overage afforded under MP 0461 is applicable only as respects property owned in common by the association." The operative phrase is "coverage afforded under MP 0461." As the above discussion revealed, that coverage is susceptible to two different interpretations. Continental argues, however, that the May 2 endorsement clarifies that coverage afforded under MP 0461 only extends to property owned in common by the Association, thereby excluding anything within the bare walls of individually owned units. The plain language of the endorsement strongly favors that interpretation.

The Association's interpretation of the May 2 endorsement rests on its version of the coverage afforded under MP 0461. In its view, the net effect of MP 0461 was to add the swimming pool, restaurant and sewer plant to the policy's basic coverage provided in MP 0082. It contends that the May 2 endorsement can reasonably be interpreted to mean that the policy covers those additional three structures *only so long* as they remain the property of the Association.

The court believes that such a reading of the May 2 endorsement unduly tortures its otherwise plain meaning. The endorsement does not use the words "so long as" or any other term suggesting time or duration; rather, it uses the phrase "only as respects." Webster's Dictionary defines the word "respect" as "concerning" or "with regard to" or "related to." The only reasonable reading, therefore, of the May 2 endorsement is that the coverage afforded under MP 0461 only applies to property owned in common by the Association. The insurer's choice of language thus effectively eliminated the ambiguity the court found in MP 0461 by explicitly limiting the policy's coverage to property owned in common by the Association. In sum, whichever interpretation of MP 0461 is adopted, it becomes clear from the May 2 endorsement that the policy's coverage only extends to property owned in common by the Association and not to the interior of individually owned units.

Other language in the May 2 endorsement further undermines the Association's argument that it has presented a reasonable interpretation of the policy. For example, the second sentence of the May 2 endorsement states that "the deductible applicable to the interior

of these units owned by the association is $250 per occurrence."[4] The word "these" clearly refers back to the units owned by the Association and afforded coverage under MP 0461. This would serve to eliminate any reasonable possibility that the interiors of individually owned units were covered under the policy—whether limited to personal property or including fixtures, improvements and alterations. The Association's point, that the $250 deductible must refer solely to the personal property of the three structures added by MP 0461, misses the mark for a simple reason: the term "unit" can not reasonably refer to a swimming pool, restaurant building or sewer plant, and is nowhere so defined.

Likewise, the May 2 endorsement's reference to "the declaration to the By-Laws" buttresses the court's conclusion. The section titled "Insurance" states that the Board of Directors of the condominium "shall purchase" insurance to cover "the buildings and improvements erected upon the property, all fixtures and personal property *owned in common by the unit owners* . . . ." Nowhere does the Board of Directors obligate itself to purchase coverage for any property owned individually by unit owners. The declarations also make it clear that property owned in common is that property which is not part of a unit. In evaluating the Association's interpretation of the May 2 endorsement, the court notes that it has failed to provide any countervailing interpretation to that endorsement's reference to the declarations of the by-laws.

■ The Association has failed to point to any language after the preprinted MP 0082 that specifically spells out coverage favoring its interpretation. Instead, the court has before it, as the last document relevant to the scope of coverage, a typewritten endorsement stating that coverage is limited to property owned in common by the Association. "It is, of course, clear that a typewritten endorsement . . . must be given effect over the printed provisions of the body of the policy to the extent that the body is in conflict with the endorsement." Buntin v. Continental Ins. Co., 583 F.2d at 1205–06 (3d Cir. 1978) (construing an automobile liability insurance policy).

---

[4] The deductibles under the policy are $250 for personal property of the insured and $10,000 for buildings owned by the insured, including damage to fixtures, improvements and alterations.

## CONCLUSION

In sum, and reading the entire insurance policy and relevant documents as a unified whole, the court finds that the Association has failed to present a reasonable alternative reading of its insurance policy with Continental. Having found that the language of the May 2 endorsement clearly eliminates coverage of individually owned units, the court finds in favor of the insurer. Judgment will be entered accordingly.

## ORDER

This matter having come before the court on cross motions for summary judgment pursuant to Rule 56, Fed.R.Civ.Pro.; and

The court having considered the submissions of the parties and having heard oral argument on June 13, 1991; and

For the reasons set forth in the opinion accompanying this order;

IT IS this 28th day of June, 1991 hereby

ORDERED that plaintiff's motion for summary judgment is DENIED WITH PREJUDICE and defendant Continental's motion for summary judgment is GRANTED.

No costs.