**JOSEPH OLMEDA, JR. and FELIX LLANOS, Plaintiffs**
**v.**
**GOVERNOR ROY L. SCHNEIDER and THE GOVERNMENT OF THE VIRGIN ISLANDS, Defendants**

Civil No. 1995/68F

District Court of the Virgin Islands

Div. of St. Croix

June 22,1995

ARCHIE JENNINGS, ESQ., St. Thomas, VI, *for plaintiffs*

DUDLEY HUGHES, ESQ., (Office of the Attorney General), St. Croix, VI, *for defendants*

FINCH, *Judge*

THIS MATTER comes before the Court on plaintiffs' motion for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. The parties came before this Court for a hearing on June 21, 1995. As plaintiffs have brought claims under 42 U.S.C. § 1983, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(3).[1]

---

[1] At the hearing on the preliminary injunction, the Assistant Attorney General questioned the Court's jurisdiction over this case citing *Brow v. Farrelly*, 28 V.I. 345, 994 F.2d 1027 (3d Cir. 1993). In that case the Third Circuit stated that "neither the Territory of the Virgin Islands, nor its officers acting in their official capacities are 'persons' under 42 U.S.C.

## I. BACKGROUND AND FACTS

Plaintiffs Joseph Olmeda, Jr. and Felix Llanos seek injunctive relief from this Court reinstating them to their former positions of employment with the Government of the Virgin Islands. Mr. Olmeda, who had served as Assistant Hospital Administrator for the Juan F. Luis Hospital and Medical Center for eleven (11) years, was terminated by the Governor on May 8, 1995. Mr. Llanos, who had been employed as Motor Pool Coordinator of the Department of Property and Procurement for nearly eight (8) years, was terminated by the Governor on February 13, 1995. From the evidence adduced at the hearing on this matter, both plaintiffs had been given consistently favorable evaluations for their work, and neither had received any reason for his summary dismissal. It is undisputed that neither plaintiff ever occupied a confidential or policymaking position in the Government of the Virgin Islands.[2]

During the recent election campaign in this Territory, both plaintiffs occupied visible positions in the campaign of Derek M.

§ 1983." 28 V.I. at 361 (quoting *Ngiraingas v. Sanchez*, 495 U.S. 182, 192, 109 L. Ed. 2d 163, 110 S. Ct. 1737 (1989)). The government apparently neglected to read the footnote to this section of the Third Circuit's opinion which makes clear its inapplicability to the case at bar. In *Brow*, as in *Ngiraingas*, the courts were dealing with the question of retrospective monetary relief. Footnote 12 of the *Brow* decision makes clear that the Third Circuit did not intend to bar suits under 42 U.S.C. § 1983 for prospective injunctive relief against officials of the Territory acting in their official capacity. This Court agrees with the holding of the U.S. Court of Appeals for the Ninth Circuit in *Guam Soc. of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366 (9th Cir. 1992). There, the court held that a result such as that urged by the Assistant Attorney General in the case at bar

"would totally nullify the provision of section 1983 imposing liability upon persons acting under color of law of 'any State *or Territory*.'"

*Id.* at 1371 (emphasis in the original). This Court is confident that the Third Circuit did not intend such a result—and their footnote 12 makes that clear. Therefore this Court finds *Brow* to be inapposite to the case at bar.

[2] A factual dispute exists as to whether either plaintiff, at the time of discharge, was a member of the classified service of the Government of the Virgin Islands. That matter is only tangentially relevant to our present inquiry. Under *Branti v. Finkel*, 445 U.S. 507, 518, 63 L. Ed. 2d 574, 100 S. Ct. 1287 (1979), the only permissible test to determine whether hiring or firing on the basis of political affiliation is constitutional is whether the position is one in which political affiliation is a legitimate requirement for the effective performance of the public office involved (i.e., often confidential or policymaking positions). To the extent that exempt/classified distinctions are utilized in determining which Government employees may be discharged for their political affiliation, the Executive would be well-advised to recognize that these categories must mirror the categories set forth in *Branti* and its progeny in order to pass constitutional muster.

Hodge and Alfred O. Heath. Mr. Olmeda served as Co-Chairman of the Hodge-Heath Central Committee; Mr. Llanos testified that he coordinated transportation for the campaign. Plaintiffs assert that they were fired solely because of their association with the Hodge-Heath campaign and assert that their discharge constitutes a deprivation of their First and Fourteenth Amendment rights of free association and free speech. The Government opposes plaintiffs' petition for injunctive relief on the following grounds: (1) the Court cannot restrain firings that have already occurred; (2) no Constitutional rights are involved; and (3) plaintiffs have failed to exhaust their administrative remedies. The Court will address each of these contentions.

## II. THE LEGAL STANDARD

The grant or denial of a preliminary injunction rests in the discretion of the trial court and may be reversed on appeal only if the decision below was an abuse of discretion. *See, e.g., Brotherhood of Locomotive Engineers v. MO-KS-TX R.R. Co.*, 363 U.S. 528, 80 S. Ct. 1326, 4 L. Ed. 2d 1379 (1960); *A.L.K. Corporation v. Columbia Pictures Indus. Inc.*, 440 F.2d 761, 763 (3d Cir. 1971). Requests for injunctive relief invoke the court's equitable discretion and resolving such motions require a delicate balance of factors. There are four general requirements:

> (1) the moving party must produce evidence sufficient to convince the court that in the absence of the relief he will suffer irreparable injury;
> (2) the moving party must show a likelihood of success on the merits;
> (3) that granting the relief will not result in greater harm to the other party; and
> (4) that granting the relief will be in the public interest.

*Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1985); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985). All of the above factors are balanced with regard to any final decision and the strength of any above factor may affect the necessary showing with regard to another. *Marxe v. Jackson*, 833 F.2d 1121, 1128 (3d Cir. 1987).

## II. DISCUSSION

A. *Irreparable Injury*

A clear showing of irreparable injury is an absolute necessity. *Id.* at 1128 (citing *Moteles v. University of Pennsylvania*, 730 F.2d 913 (3d Cir.), *cert. denied*, 469 U.S. 855, 83 L. Ed. 2d 114, 105 S. Ct. 179 (1984) and *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir. 1986). The requisite injury must be more than merely serious or substantial, and it must be of a peculiar nature, so that money cannot atone for it. *ECRI*, 809 F.2d at 226; *Naccarati v. Wilkins Twp.*, 846 F. Supp. 405, 408 (W.D.Pa. 1993).

It is well-established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690, 49 L. Ed. 2d 547 (1976). But the assertion of First Amendment rights does not automatically require a finding or irreparable harm, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits. *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989); *Rushia v. Town of Ashburnham*, 701 F.2d 7, 10 (1st Cir. 1983). Rather, the plaintiffs must show a chilling effect on free expression. *Id.; Dombrowski v. Pfister*, 380 U.S. 479, 487, 85 S. Ct. 1116, 1121, 14 L. Ed. 2d 22 (1965). It is the purposeful government penalization of First Amendment rights which constitutes irreparable injury. *Id.; Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983); *Wooley v. Maynard*, 430 U.S. 705, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977); *Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1984).

In the instant case, plaintiffs assert that their dismissals were predicated upon their political association and beliefs in violation of the First and Fourteenth Amendments. Upon consideration of the record and submissions of counsel, this Court is left with little room to seriously doubt plaintiffs' contentions. Mr. Olmeda, after nearly eleven (11) years of conscientious government service, was summarily fired without any reason by letter of the newly-elected Governor on May 8, 1995. Mr. Llanos, after eight (8) years of competent service, was summarily dismissed without any reason by letter of the newly-elected Governor on February 13, 1995. Both plaintiffs, only months before their termination, had occupied

highly visible positions in the election campaign of the Governor's chief political opponent.[3] Moreover, both official firings completely disregarded all normal channels for such processes. Under normal circumstances, this Court would not expect the Governor to personally engage in the dismissal of low-level employees of the Juan F. Luis Hospital and the V.I. Department of Planning and Procurement. Clearly, normal channels and processes are in place for such terminations.[4] Finally, the Government advances not one shred of evidence, much less a coherent theory, to contradict plaintiffs' allegations. Consequently, this Court is left with no alternative but to conclude that these firings constitute precisely the sort of the government penalization of First Amendment rights of association repeatedly forbidden by the Supreme Court since *Elrod*.

■ Nevertheless, the Government contends that loss of employment does not constitute sufficient irreparable harm and that the plaintiffs have an adequate remedy either at law or through the administrative process.[5] This Court must reject that conclusion because more is involved than the simple loss of employment. What lies at the heart of this case is the constitutional right of government employees to associate freely with political groups of their choice without official reprisal for such affiliation. Inasmuch as this case, like *Elrod*, involves constitutional rights of association which must carefully be guarded against infringement by public officials, this Court finds that plaintiffs' loss of First Amendment

---

[3] As mentioned previously, Mr. Olmeda was Co-Chairman of the Hodge-Heath Central Committee. In addition, he hosted a Sunday afternoon Spanish-language radio program which supported the Hodge-Heath ticket during the last three months of the campaign. Likewise, as coordinator of transportation, Mr. Llanos was a highly visible Hodge-Heath supporter.

[4] Mr. Olmeda testified that the Juan F. Luis Hospital is governed by a Board which is headed by a Chief Executive Officer. Clearly, this Board or the Director of Personnel of the Hospital would be entrusted with the responsibility of discharging low-level employees.

[5] With respect to the latter contention, the law is well-settled. A plaintiff may properly bring a 42 U.S.C. § 1983 suit to federal court even if the state provides judicial or administrative remedies that appear completely adequate to redress the injuries. In other words, a plaintiff need not exhaust state remedies before initiating a § 1983 suit in this Court. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 183 (1970).

freedoms constitutes sufficient irreparable harm to warrant injunctive relief.[6]

## B. *Likelihood of Success on the Merits*

■ Through 42 U.S.C. § 1983, Congress sought to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position. *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 363, 116 L. Ed. 2d 301 (1991); *Monroe v. Pape*, 365 U.S. 167, 172, 81 S. Ct. 473, 476, 5 L. Ed. 2d 492 (1961). Under the proof scheme established by the U.S. Supreme Court for such actions, a plaintiff must first carry the initial burden of establishing a prima facie case. This requires a plaintiff to come forward with evidence that constitutionally protected conduct was a substantial or motivating factor in his discharge. *See, Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to show, by a preponderance of the evidence, that they would have reached the same decision even in the absence of the constitutionally protected conduct of plaintiff. *Id.* at 284-287; *Skehan v. Bd. of Trustees of Bloomsburg State College*, 590 F.2d 470, 480 (3d Cir. 1978).

From the evidence adduced by plaintiffs at the preliminary injunction hearing, this Court finds that plaintiffs have clearly established a prima facie case. The circumstances of these firings virtually compel the conclusion that the government sought to penalize plaintiffs for the exercise of their First Amendment rights of association. Both plaintiffs were fired without cause by the Governor in the aftermath of a campaign in which they visibly and vigorously campaigned for the opposing candidate. Both main-

---

[6] The fact that plaintiffs have already been terminated is irrelevant. It is the continuing harm suffered by the loss of First Amendment freedoms and not merely the loss of employment which is the appropriate subject for injunctive relief. Under the rule of *Elrod v. Burns*, 427 U.S. 347, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976), the loss of First Amendment freedoms constitutes irreparable injury for which there is no adequate remedy at law. Consequently, injunctive relief to correct that injury is appropriate even though plaintiffs may already have suffered loss of employment. For a recent case demonstrating precisely this proposition, *see, Zorzi v. County of Putnam*, 30 F.3d 885 (7th Cir. 1994) (Holding that injunctive relief is appropriate to reinstate a plaintiff who was discharged for her political party affiliation in violation of the First and Fourteenth Amendments).

tained consistently favorable work records and neither held a confidential or policymaking position. The Government advances no reason for the discharge of either plaintiff. On this record, this Court can only conclude that the exercise of First Amendment liberties was more likely than not a motivating or determinative cause of the defendant's action. Accordingly, plaintiffs have made a clear showing with respect to their likelihood of success on the merits.

## C. *Balance of Hardship*

■■ In deciding whether to grant injunctive relief, the Court should consider whether issuing a preliminary injunction would cause greater harm to the nonmoving party. *Naccarati*, 846 F. Supp. 405, 414 (W.D.Pa. 1993). In the instant case, the Government has neither alleged nor made any plausible showing of hardship should the plaintiffs be reinstated to their former positions. On the other hand, plaintiffs have testified as to their difficulty in finding steady employment on St. Croix—and their difficulty in making ends meet. As of the aforementioned date of the hearing on this matter, both plaintiffs remain unemployed. Accordingly, this Court finds that the balance of hardship unquestionably weighs in plaintiffs' favor.

## D. *The Public Interest*

■ The final factor bearing on the Court's discretion to issue or deny a preliminary injunction is the public interest. Whether the public interest might be furthered or injured by an injunction must be given considerable weight. *See, e.g., Yakus v. U.S.*, 321 U.S. 414, 64 S. Ct. 660, 88 L. Ed. 834 (1944); *U.S. v. Ingersoll-Rand Co.*, 320 F.2d 509 (3d Cir. 1963).

In the instant case, the public interest is clear. There can no longer be any doubt in the Virgin Islands that the freedom to associate with others for the advancement of political ideas is protected under the First and Fourteenth Amendments of the U.S. Constitution. Such activity is not subject to official reprisal. Low and mid-level public employees, such as the plaintiffs in this action, cannot constitutionally be forced to choose between their adherence to a political party of their choice and continued public

employment. Inasmuch as the actions of defendants required that choice, this Court must condemn these patronage practices as offensive to the Constitution and inimical to the traditions of democracy.

## IV. CONCLUSION

In its equitable discretion, this Court finds that all relevant factors to the issuance of a preliminary injunction weigh decisively in plaintiffs' favor. Accordingly, in light of the foregoing reasons, plaintiffs' petition for injunctive relief is hereby granted. An appropriate order follows.

DATED this 22nd day of June, 1995.

## ORDER OF THE COURT

THIS MATTER comes before the Court on plaintiffs' motion for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. The parties came before this Court for a hearing on June 21, 1995.

Upon consideration of the submissions of counsel and for the reasons disclosed in the Memorandum Opinion of even date, it is hereby ORDERED that plaintiffs' motion for a preliminary injunction is GRANTED. This Court directs the Government of the Virgin Islands to formally reinstate Mr. Joseph Olmeda, Jr. and Mr. Felix Llanos to their former positions of employment within ten (10) days of the date of this Order.

DATED this 22nd day of June, 1995.