**VALENTINO MCBEAN and YVETTE MCBEAN, Appellants,**
**v.**
**GUARDIAN INSURANCE AGENCY,**
**C.E. BRATHWAITE & ASSOC., INC.,**
**and CHRISTOPHER BRATHWAITE, Appellees.**

Civ. No. 165/1996

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 10, 1999

Joseph Arellano, Esq., St. Thomas, U.S.V.I., *for Appellants*

205

ADAM CHRISTIAN, ESQ., St. Thomas, U.S.V.I., *for Appellees*

MOORE, Chief Judge

## INTRODUCTION

Mr. and Mrs. McBean ["the McBeans" or "appellants"] are suing Guardian Insurance Company ["GIC"], the McBeans' insurer, and Christopher Brathwaite and Brathwaite & Associates ['Brathwaite'], their insurance agent, to recover money damages under a property insurance contract in the aftermath of Hurricane Marilyn [collectively "appellees"]. The McBeans filed a claim for approximately $236,050 in damage to the structure and $142,624 for personal effects and furniture. GIC declared the policy void, refused to pay, and attempted to return the premiums paid based upon an alleged falsification of the type of construction on the insurance application. This case is on appeal from the Order of the Territorial Court denying the McBeans' motion for preliminary injunction and motion for declaratory judgement, dated June 24, 1996.[1]

The complaint alleges that the McBeans signed an insurance application which had been completed by their agent, Brathwaite. On the form, which had been used in years past, was checked the box indicating "brick, stone, masonry." Included in the four other options were "frame" and "mixed." These terms were not defined in the application, nor were they supplied to the McBeans. The applicable definitions were, however, in the possession of Brathwaite, who allegedly completed the form with knowledge of how the house was constructed, and who is, under Virgin Islands law, the McBeans' agent. The McBeans argued below and argue in support of their appeal that they interpreted "brick, stone, masonry" to mean *primarily* brick, stone, or masonry.[2] The house appears to have had some sort of second-story office that was wooden. The McBeans argue that it amounted to 15% of the total structure; GIC

---

[1] Appellees point out that the McBeans did not set forth the denial of the motion for an imposition of a constructive trust in their statement of issues (Appellee's Brief p. 2), although this issue is dealt with generally.

[2] Both sides agree that "or" can be inserted in the phrase.

avers that it amounts to more like 26%.[3] Further, there seems to be some inconsistency in the applications presented to the Court: GIC's having only 'brick, stone, masonry' checked, while the McBeans' had both 'brick, stone, masonry' and 'mixed' checked.[4]

On May 8, 1996, the McBeans filed 3 motions, all against GIC only, for: 1) a temporary restraining order and imposition of a constructive trust; 2) a preliminary injunction and imposition of a constructive trust; and 3) a declaratory judgment on an expedited basis. The first two motions sought an order enjoining GIC from denying the McBeans coverage under the policy and mandating GIC provide coverage under the policy, and an order ordering GIC to establish a constructive trust on the proceeds and, as trustee, to pay over the proceeds to the McBeans as beneficiary. The last motion sought declarations that the terms "mixed" and "brick, stone, masonry" as used are ambiguous, that the policy is still in force, that GIC did not have good cause to void the policy, and that the definitions are unenforceable and not part of the contract.

## DISCUSSION

### Preliminary Injunction

■ A preliminary injunction is reviewable on appeal by permission, notwithstanding the fact that it is not a final order. F.R. App. P. 5(a).[5] In reviewing the Territorial Court's denial of a preliminary injunction, this Court must determine whether there has been an error of law, an abuse of discretion, or an obvious mistake in dealing with the evidence presented.[6] The four factors necessary for the granting of a preliminary injunction are: 1) irreparable harm, 2) reasonable probability of success on the merits, 3) possibility of harm to third persons, and 4) the public

---

[3] The insurance claim included repair to this structure.

[4] The McBeans indicate that this is a red-herring, since GIC voided the policy based solely on its version of the application and before it knew of the other version.

[5] This appeal was filed before the promulgation of the Virgin Islands Rules of Appellate Procedure. Currently, the applicable rule is V.I. R. APP. P. 6(a).

[6] *Accord Frank's GMC Truck Center, Inc., v. Gen. Motors Corp.,* 847 F.2d 100, 101 (3d Cir. 1988). *See also AT&T v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1427 (3d Cir. 1994), *cert. denied* 514 U.S. 1103, 115 S. Ct. 1838, 131 L. Ed. 2d 757.

interest.[7] Since there is no possibility of harm to third persons and the public's interest is simply to have a properly functioning insurance market, we examine the first and second factors.

*Irreparable Injury*

The McBeans allege irreparable harm in three ways. First, they are unable to obtain alternative insurance and thus face property damage risks that could otherwise be insured. Second, the residence is deteriorating due to their inability to restore it. Third, they fear future uninsurability and damage to their credit rating based on the allegations of concealment and misrepresentations given as reasons why GIC voided the policy.

The general rule, with exceptions not pertinent here, is that irreparable injury does not exist in actions for monetary damages.[8] Further, there is no irreparable harm if an adequate remedy at law exists.[9] The Territorial court found that the McBeans "failed to establish that there is no adequate remedy at law to redress the alleged wrongs" or that "they will suffer irreparable harm." (Terr. Ct. Order at 3-4.)

■ We agree that the McBeans have failed to demonstrate the irreparable injury required for a preliminary injunction. Regarding their first claim, risk exposure due to inability to obtain insurance, there is nothing in the record to indicate that appellants' attempted and failed to obtain other insurance. In addition, both this first claim and any additional damage to the property due to deterioration for lack of proceeds to rebuild can be adequately remedied by an award of monetary damages at a trial on the merits. Similarly, a trial will also settle the questions of future uninsurability and whether the McBeans did or did not conceal or misrepresent the property to GIC. Thus, future insurers and

---

[7] *West Indian Co., Ltd. v. Gov't of the Virgin Islands*, 22 V.I. 358, 366-367, 643 F. Supp. 869, 873 (D.V.I. 1986), *aff'd*, 812 F.2d 134 (3d Cir. 1987).

[8] "A clear showing of irreparable injury is an absolute necessity. The requisite injury must be more than merely serious or substantial, and it must be of a peculiar natures, so that money cannot atone for it." *Olmeda v. Schneider*, 32 V.I. 369, 373, 889 F. Supp. 228 (D.V.I. 1995) (citations omitted).

[9] *See Jaz Ltd. Partnership v. Gov't of the Virgin Islands*, 25 V.I. 364, 369 (D.V.I. 1990) (citing 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1951 at 506); *Anderson v. Davila*, 37 V.I. 496, 125 F.3d 148, 1997 WL 561228, 3d Cir. 1997).

lenders will have a complete record on which to decide whether or not to insure the property or extend credit.

*Reasonable Probability of Success*

GIC asserts that the Territorial Court was "not at liberty, either to disregard words used by the parties, descriptive of the subject matter, or to insert words which the parties have not made use of," and therefore, GIC asserts, the Territorial Court correctly refused to adopt the McBeans' argument. *Coakley Bay Condo. Ass'n v. Continental Ins. Co.*, 26 V.I. 348, 354, 770 F. Supp. 1046 (D.V.I. 1991) (citations omitted). This Court agrees that courts "'should read policy provisions to avoid ambiguities, if torture the language to create them.' Furthermore 'to establish an ambiguity, the insured must do more than proffer a competing possible construction of the policy ....'" *Id.* at 355-56 (citations omitted).

Moreover, we agree that Brathwaite was the McBeans' agent, so even if the policy were ambiguous, Brathwaite had GIC's definitions of the terms, which knowledge would be imputed to the McBeans as principal. *See* RESTATEMENT (SECOND) OF AGENCY, § 275 (1958).

█ Under the Virgin Islands Code, in order to void a policy, GIC must prove by clear and convincing evidence that the McBeans acted "with intent to deceive." *See* 22 V.I.C. § 809 ("no ... misrepresentation ... made by the insured or in his behalf, shall be deemed ... material ... unless [it] is made with intent to deceive"). While knowledge can be imputed from the agency relationship, it may be more difficult to impute an intent to deceive from agent to principal. Nevertheless, it will not be easy for the McBeans to show that they did not know the type of construction used on their property or that they were unaware of what was contained on the application they signed and submitted to GIC.

█ Although the McBeans have some chance of prevailing on the merits, we cannot find that the Territorial Court abused its discretion in finding that the McBeans failed to show the likelihood of their ultimate success.

## Declaratory Judgment

Generally, an interlocutory order denying declaratory judgment is not appealable. There is, however, the concept of "pendent appellate" jurisdiction over an otherwise unappealable order. Pendent appellate jurisdiction is appropriate, however, only if this Panel cannot decide the appealable order, either because the ordinarily non-appealable order controls the appealable order, or because the two orders are inextricably bound.[10] We agree that the Appellate Division would have jurisdiction to review the declaratory judgment if it were necessary to rule on the appealable order, i.e., the denial of injunctive relief.

■ Since this Court has been able to determine that the Territorial Court properly denied injunctive relief, there is no proper occasion for the exercise of pendent appellate jurisdiction over the interlocutory order in this instance. An appropriate order follows.

---

[10] *See Weiss v. York Hospital,* 745 F.2d 786, 803 (3d Cir. 1984); *Kershner v. Mazurkiewicz,* 670 F.2d 440, 449 (3d Cir. 1982) (en banc). The review is only available "to the extent necessary to ensure meaningful review of an appealable order." *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 209 (3d Cir. 1990).