**Kelvin DENNIE, Alphonso Francis, Paul Roberts, Rudolph Albert, Desmond Trim, Leonard James, Myron Woodly, Stephen St. Rose, and Clovelle Phillip, Appellants,**

v.

**ABRAMSON ENTERS., INC., Virgin Islands Port Auth., Virgin Islands Taxicab Comm'n, Appellees.**

Nos. 1997–161, Civ. 97/310.

District Court,Virgin Islands,
Appellate Division.
D. St. Croix.

Decided Dec. 8, 2000.

Lee Rohn, St. Croix, U.S.V.I., for appellants.

George W. Cannon, St. Croix, U.S.V.I., for appellee Abramson Enters., Inc.

Frederick Handleman, Assistant Attorney General, Amicus curiae for Abramson Enters., Inc.

Before THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; STANLEY S. BROTMAN, Senior Judge, District Court for the District of New Jersey, Sitting by Designation; BRENDA J. HOLLAR, Territorial Court Judge, Division of St. Thomas and St. John, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM.

Kelvin Dennie, Alphonso Francis, Paul Roberts, Rudolph Albert, Desmond Trim, Leonard James, Myron Woodly, Stephen St. Rose, and Clovelle Phillip ["taxi drivers"] appeal a denial of a motion for a temporary restraining order and a preliminary injunction against Abramson Enterprises, Inc. ["Abramson"].

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Underlying Claim

The taxi drivers are duly-licensed automobile-for-hire owners and operators on St. Croix. Abramson operates red and white busses ["busses"], primarily transporting cruise ship passengers on pre-arranged and pre-paid tours from the Frederiksted Pier to Christiansted. Abramson "contracts out transportation services to cruise ships and tour agencies, who arrange tours for cruise ship passengers in advance." (Mem.Op. and Order of July 24, 1997 ["Terr.Ct. Decision"] at 5.) Passengers buy tickets on the ship and give them to the bus driver. Abramson is paid by the ships and/or tourist agencies. *Id.* The taxi drivers contend that Abramson operates the busses without the proper licensing and medallions, that the Virgin Islands Taxicab Commission ["Taxicab Commission"] has failed to investigate and enforce its rules, and that the Virgin Islands Port Authority ["Port Authority"] allows the busses onto its pier in contravention of its rules regarding access to tourists on the pier.

On May 16, 1997, the taxi drivers filed suit in the Territorial Court seeking injunctive relief and damages against Abramson, the Port Authority, and the Taxicab Commission. Neither the Port Authority nor the Taxicab Commission responded. On May 27, 1997, the Territorial Court denied the plaintiffs' motion for temporary restraining order ["TRO"], which sought to prohibit Abramson from operating its busses without medallions until a trial on the merits. (App. at 119.) The trial court denied the TRO based on a lack of irreparable harm, finding that the plaintiffs were suffering only monetary damages. Six days later, Abramson opposed the motion. On June 9, the drivers moved for reconsideration. (*Id.* at 120.) The court held a hearing on the motion to reconsider, at which only the drivers and Abramson appeared. Following argu-

ment, but without taking any evidence, the judge converted the application for temporary restraining order into a motion for preliminary injunction, and denied it by an order entered on July 24, 1997. The denial of the preliminary injunction affected only the drivers versus Abramson and not the Port Authority or Taxicab Commission.

## B. The Territorial Court Decision

■ After setting out the procedural and factual background, the Territorial Court began its legal analysis by stating the factors to be considered before granting a preliminary injunction: 1) the threat of irreparable harm to the taxi drivers if the injunction is denied, 2) the balance of the harm between the parties if granted, 3) the probability of the taxi drivers' success on the merits, and 4) the public interest. The judge noted that the taxi drivers must establish all four of these factors to obtain a preliminary injunction; a preliminary injunction will not issue if even one of these factors is not shown.

The trial judge, relying in part on *Virgin Islands Taxi Ass'n. v. Lettsome*,[1] determined the existence of the first factor, that the taxi drivers were suffering economic losses and that the losses amounted to irreparable harm because they were difficult to ascertain. The judge found that the second and fourth factors, the balance of the hardships and the public interest, favored neither party. With respect to the third factor, however, the judge found that plaintiffs were unlikely to succeed on the merits, because it appeared that Abramson's vehicles were not "automobiles for hire," and therefore did not require medallions under 20 V.I.C. § 407(a) and 413(c) (requiring that owners

of automobiles for hire, excluding "motor busses," possess medallions before such automobiles can be operated). The judge thus denied the preliminary injunction. (*See* Terr.Ct. Decision at 10–14.)

## II. DISCUSSION

### A. Jurisdiction

■ This Court has jurisdiction to review final judgments and orders of the Territorial Court pursuant to V.I.Code Ann. tit. 4, § 33 and section 23A of the Revised Organic Act of 1954.[2] An order denying a preliminary injunction was an appealable interlocutory order at the time this appeal was filed.[3] *See* 28 U.S.C. § 1292(a) ("[I]nterlocutory orders . . . refusing . . . injunctions" are appealable by right) and FRAP 4(a). Orders granting or denying temporary restraining orders are generally unappealable. *See Vuitton v. White*, 945 F.2d 569, 572 (3d Cir.1991). Before proceeding to the merits of this appeal, we must resolve whether the order before us was properly an order denying a preliminary injunction, and hence subject to our jurisdiction, or whether it was in fact an order denying a temporary restraining order, and therefore unappealable. We find that the order denied a preliminary injunction, and thus this Court has jurisdiction to review it.

Immediately after the June 26, 1997 hearing to reconsider the denial of the temporary restraining order, the taxi drivers filed a "Notice of Filing Additional Affidavit in Support of Motion for *Preliminary Injunction*," in which they stated there was an issue raised "at the hearing on the *preliminary injunction* . . . ." (*See* Suppl.J.A. at 105; June 30, 1997 (emphasis added).) Abramson submitted an opposi-

---

1. *See* Civ. No. 97–117, 1997 WL 143960, at *4 (Terr.Ct., Mar. 10, 1997), *aff'd Virgin Islands Port Auth. v. Virgin Islands Taxi Ass'n.*, 979 F.Supp. 344, 352 (D.V.I.App.Div.1997).

2. Title 48 U.S.C. § 1613a (1994), *reprinted in* V.I.Code Ann., Organic Acts, at 159–60 (1995 & Supp.1999) (preceding V.I.Code Ann. tit. 1).

3. This appeal was brought in 1997, before the Virgin Island Rules of Appellate Procedure became effective on November 1, 1998. *See* V.I.R.App.P. 1(b).

tion, which also referred to "the hearing on the *preliminary injunction* . . . ." (*See* Suppl.J.A. at 111; Def.'s Opp'n, July 15, 1997.) The parties twice implicitly agreed to treat the application for a temporary restraining order as a motion for a preliminary injunction. In accordance with that agreement, the Territorial Court expressly stated that it was treating the "application for a temporary restraining order and the hearing . . . as one for *preliminary injunction*" against the party which had notice and filed responses, Abramson Enterprises, Inc. (*See* Br. of Appellants at 36; Terr. Ct. Decision (emphasis added).) Neither party has taken issue with this aspect of the trial judge's decision. The court then went on to discuss the factors required to evaluate whether a preliminary injunction should issue and found that *preliminary injunction* relief was not supported.

■ Further, the court was not required to hold a hearing before denying relief. "[P]reliminary injunctions are denied without a hearing, despite a request therefor by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless." 11A CHARLES A. WRIGHT ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: Civil § 2949 at 478–79 (1973).[4] This is the rule in the federal courts of this circuit, and we see no reason it should not apply in the Territorial Court of the Virgin Islands. *Accord Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir.1990) ("The applicable Federal Rule does not make a hearing a prerequisite for ruling on a preliminary injunction."). In short, we have jurisdiction to review this denial of injunctive relief.

4. Of course, notice and a hearing are required before a preliminary injunction may be *granted*. *See* FED.R.CIV.P. Rule 65(a)(1) ("No preliminary injunction shall be issued without notice to the adverse party."). The Supreme Court has held that "[t]he notice required by Rule 65(a) before a preliminary injunction

## B. Standard of Review

■ "In reviewing the Territorial Court's denial of a preliminary injunction, this Court must determine whether there has been an error of law, an abuse of discretion, or an obvious mistake in dealing with the evidence presented." *McBean v. Guardian Ins. Agency*, 52 F.Supp.2d 518, at 520 (D.V.I.App.Div., Mar. 10, 1999). A trial judge's findings of fact which are based wholly on pleadings, affidavits and other paper evidence are not entitled to deference on appeal. This Court is as capable as the trial judge of assessing facts contained in documents and may substitute its own findings of fact if we disagree with the trial court. *Accord, e.g., Altman v. Altman*, 653 F.2d 755, 759 n. 3 (3d Cir. 1981) ("[W]here the record consists of purely documentary evidence, we are in as good a position as the district court to find the facts.").

## C. Preliminary Injunction Analysis

### 1. *Likelihood of Success on the Merits*

The taxi drivers most strenuously object to the Territorial Court's conclusion that they do not have a strong likelihood of success on the merits. The trial judge found that Abramson's busses do not need medallions because Abramson is a public utility and the busses are therefore exempt from the requirements applicable to taxis under V.I.CODE ANN. tit. 20, § 101. The judge found that Abramson

> is providing passenger service at the Pier by motor busses. The applicable statutes are plain on their face. [Abramson] is subject to regulation under chapter 1, of title 30, and therefore is not an "automobile for hire." Accordingly, Abramson need not possess medallions to operate its busses at the pier.

can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 433, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).

(Terr.Ct. Decision at 12.) The judge continued:

> Moreover, the Court's conclusion is supported by the fact that the motor vehicle statute appears to distinguish between an "automobile for hire" and a "motor bus" by listing them separately. For example the registration section of the statute provides:
>
> > Every automobile for hire, every motor bus, every automobile truck for hire, and every drive-yourself motor vehicle lease shall be issued, and shall carry a license plate . . . .
>
> 20 V.I.C. § 338 (1995). Further, the automobiles *for hire section requires* that every "automobile for hire" shall have a sign or dome light thereon bearing the word "Taxi". 20 V.I.C. § 402(d). This Court takes judicial notice that in this territory, no "motor bus", that is, a passenger-carrying vehicle with a seating capacity in excess of a car or, a vehicle referred to locally as a taxi van, bears such a sign or light. Accordingly, the statutory scheme suggests that "motor busses" were not intended to be included in the classification of "automobiles for hire."

(*Id.* at 13–14.) Title 20, Section 101 of the Virgin Islands Code, excepts "motor busses or passenger-carrying trucks" from the definition of "automobiles for hire" and refers this regulation to 30 V.I.C. § 1 as a public utility by the Public Services Commission.

We ordinarily would question the judge's determination that the taxi drivers are not likely to prevail on the merits, because the judge ruled without the benefit of an evidentiary hearing and without any input from the Port Authority or the Taxicab Commission, much less the Public Services Commission.[5] We need not review the trial judge's finding on this factor, however, because there is an independent ground for sustaining his denial of the preliminary injunctive relief.

### 2. *Availability of Money Damages*

■ Contrary to the trial judge's finding on this factor, this Court finds that the taxi drivers have not established that their legal remedy of money damages is inadequate. If the taxi drivers win after a trial on the merits, the judge will be able to compute the amount of their economic loss. The actual number of passengers Abramson has transported over the relevant period and their destinations can be discovered or reasonably estimated with sufficient accuracy and converted into a dollar figure for all the fares the drivers lost. The feasibility of determining monetary loss distinguishes this case from the facts of the decision on which the trial court relied. *See Virgin Islands Taxi Ass'n., supra* note 1. The V.I. Taxi Association had negotiated an exclusive concession with the Port Authority to provide taxi service at the St. Thomas airport. It alleged irreparable injury because the Port Authority was allowing non-member taxi drivers to pick up passengers at the airport. Since there were several other competing associations and independents, it was not feasible to attempt to calculate or even reasonably estimate the fares and monetary damages lost to these other drivers.

This Court is capable of independently finding that money damages are adequate, whether it is treated as a question of fact or of law. If it is treated as a question of

---

**5.** Cases in other jurisdictions appear to undercut the argument that Abramson is, in fact, a public utility. *See, e.g., Aberdeen Cable TV Service, Inc. v. City of Aberdeen,* 85 S.D. 57, 176 N.W.2d 738, 741–42 (1970) ("a legislature cannot by mere fiat or regulatory order convert a private business or enterprise into a public utility, and the question whether or not a particular company or service is a public utility is a judicial one"), *cert. denied,* 400 U.S. 991, 91 S.Ct. 455, 27 L.Ed.2d 439 (1971); *Coastal States Gas Transmission v. Alabama Public Service Comm'n,* 524 So.2d 357, 360–62 (Ala.1988) (to be a "public utility, a business or enterprise must be impressed with a public interest and that those engaged in the conduct thereof must hold themselves out as serving or ready to serve all members of the public, who may require it, to the extent of their capacity.").

law, then the Territorial Court clearly made an error of law in finding that calculation of money damages was not feasible. *See McBean*, 52 F.Supp.2d 518, at 520. If the difficulty of calculating monetary damages is a question of fact, then the trial judge made "an obvious mistake in dealing with the evidence presented" on the papers, *see id.*, and we are in as good a position to make a factual finding that money damages are adequate on the purely paper evidence before both this Court and the trial court.

### III. CONCLUSION

The Territorial Court's denial of the preliminary injunction will be affirmed. This Court urges the parties to move this matter forward to a trial on the merits. The parties could have fully litigated this case in the more than three years the taxi drivers have wasted pursuing this fruitless appeal of an interlocutory decision rendered without any input whatsoever from any of the other parties who have an interest in the subject matter of this litigation.